**In the Matter of Joseph SUMNER, Bankrupt.**

**In the Matter of Rhoda SUMNER, Bankrupt.**

**NATIONAL RECREATION PRODUCTS, INC., a Delaware Corporation, Plaintiff,**

**v.**

**Joseph SUMNER, Defendant.**

**NATIONAL RECREATION PRODUCTS, INC., a Delaware Corporation, Plaintiff,**

**v.**

**Rhoda SUMNER, Defendant.**

**NATIONAL RECREATION PRODUCTS, INC., a Delaware Corporation, Plaintiff,**

**v.**

**Philip H. SHORE, Trustee, Defendant.**

**Bankruptcy Nos. B–75–2018, B–75–2019.** ·

United States Bankruptcy Court, D. New Jersey.

June 5, 1980.

---

Arthur H. Miller, New Brunswick, N. J., for bankrupts.

Raff & Scheider, P.C. by Alan D. Wiener, Newark, N. J., for creditor.

Edward A. Dreskin, Newark, N. J., for trustee.

## OPINION

AMEL STARK, Bankruptcy Judge.

National Recreation Products, Inc., a Delaware corporation, (hereinafter designated as N.R.P.), filed a complaint in this Court for leave to foreclose on a second mortgage covering premises known as 71 Buchanan Road, Edison, New Jersey, which is the residence of the bankrupts, Joseph and Rhoda Sumner, to prove the extent and validity of its lien affecting the aforementioned realty, and to join the trustee in bankruptcy, Philip H. Shore, Esquire, as a defendant. The plaintiff, as assignee of a promissory note and the real property mortgage which secured it, contends that the bankrupts have defaulted on the mortgage and that it is entitled to foreclose in order to satisfy its outstanding obligation. The trustee counters by arguing that the plaintiff has not shown adequate proof of the continuing existence of the mortgage, that the plaintiff's discharge of the co-signer's mortgage without consideration or payment implied a desire to discharge the bankrupts' mortgage also, and that the Bankruptcy Court has authority to set aside this mortgage under its powers as a court of equity.

The question presented here is whether this Court may properly cancel the mortgage as an exercise of its powers as an equity court.

## FINDINGS OF FACT

1. Joseph Sumner and Rhoda Sumner, his wife, filed Voluntary Petitions in bankruptcy in accordance with Chapter III of the Bankruptcy Act (11 U.S.C. Chapter III, Sections 21–35) and Rule 103, Rules of Bankruptcy Procedure, on August 4, 1975. Philip H. Shore, Esquire, was appointed Trustee in Bankruptcy.

2. By stipulation of the parties, the Matter of Rhoda Sumner is being tried as a companion to the Matter of Joseph Sumner.

3. Samuel Small also filed a Voluntary Petition in bankruptcy in accordance with Chapter III of the Bankruptcy Act (11 U.S.C. Chapter III, Sections 21–35) and Rule 103, Rules of Bankruptcy Procedure. Although he is not a party in interest in the matter at bar, his personal financial status has been raised as an issue relating to Joseph Sumner.

4. Joseph Sumner and Samuel Small were both officers of Winport Manufacturing Company. Winport sought to purchase another firm, Sportswear Industries, and obtained a loan for $250,000 from First State Bank (hereinafter called Bank). Sumner and Small, together with their spouses, endorsed a promissory note dated June 12, 1972, to Bank for that amount.

5. To secure the note, Sumner and his wife, Rhoda, and Small and his wife, Elaine, executed and delivered to Bank, mortgages on their respective residences. These mortgages were recorded in the Middlesex County Clerk's office on June 13, 1972. The mortgages were subsequently assigned by Bank to Plaintiff N.R.P. on January 10, 1972.

6. The parties have stipulated that in April, 1977,[1] N.R.P. discharged its mortgage on the Smalls' real property without any payment or consideration received for the cancellation. Testimony showed that Small asked for and received the cancellation. However, Sumner never requested a cancellation of the mortgage on the residence owned by his wife and him.

7. At the present time, N.R.P. has no record of demand for, or receipt of, payments from the Sumners on the mortgage.

8. On September 14, 1977, N.R.P. filed a complaint in this Court for leave to foreclose on the Sumners' mortgage and to join the trustee as a party defendant.

9. Sumner testified that he first became aware that N.R.P. wished to be paid on February 28, 1974, when he and Mrs. Sumner were advised that they were in default.[2] He also testified that he was, and is still, making payments on the first mortgage.

10. Hearing on the plaintiff's complaints was originally scheduled for October 26, 1977, but was adjourned many times until it commenced on January 31, 1980. The hearing was concluded on March 27, 1980. Counsel for each party was ordered to submit proposed statements of fact and conclusions of law, as well as briefs. Decision was reserved by this Court, pending receipt of the requested items.

11. Divergent statements and conclusions were submitted, but neither party complied with the Court's request for briefs.

## CONCLUSIONS OF LAW

■ As a general rule, the Bankruptcy Court possesses only the jurisdiction and powers expressly or by necessary implication conferred by statute. *Chicago Bank of Commerce v. Carter*, 61 F.2d 986, 988 (8th Cir. 1932); *Jones v. Kansas City Garment Making Co.*, 1 F.2d 649 (8th Cir. 1924). Under section 60b of the Bankruptcy Act (11 U.S.C. § 96[b])[3], for instance, the court

---

1. The photocopy of the discharge of mortgage in this Court's file is faint, and the date is difficult to read, but it appears to be April 25, 1977.

2. According to other testimony and evidence, N.R.P. was not the holder of the mortgage and note until January 10, 1975 (Finding of Fact # 5, supra), and because it was not then a party to the agreement, it is unlikely that N.R.P. would have notified the Sumners of the default. Instead, it was probably the initial mortgagee, Bank, that made demand.

3. Section 60b of the Bankruptcy Act provides: Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with

may authorize, via the trustee in bankruptcy, the avoidance of a mortgage as a preference. In *Swift v. Higgins*, 72 F.2d 791 (9th Cir. 1934), a chattel mortgage was set aside as a voidable preference as against other claims because not promptly recorded as required under state law.

■ In New Jersey, courts are authorized to hold a mortgage unenforceable if it was not in compliance with statutory requirements. The Secondary Mortgage Loan Act, N.J.Stat.Ann. § 17:11A–34 *et seq.* was drafted in response to widespread complaints concerning the false or misleading advertising regarding availability of loans, their terms, and exaction of exorbitant rates of interest. *Stubbs v. Security Consumer Discount*, 161 N.J.Super. 129, 133, 390 A.2d 1224 (Law Div.1978). Section 29 (now section 58, set out below [4]) of the Secondary Mortgage Loan Act specifically provided that no obligation arising out of a secondary mortgage loan would be enforceable by the state courts unless conforming strictly to the statute. *Oxford Consumer Discount Co. of North Philadelphia v. Stefanelli*, 102 N.J.Super. 549, 246 A.2d 460 (App. Div.1968), *modified*, 104 N.J.Super. 512, 250 A.2d 593 (App.Div.1969), *further modified*,

55 N.J. 489, 262 A.2d 874, *appeal dismissed*, 400 U.S. 808, 91 S.Ct. 45, 27 L.Ed.2d 38 (1970), is probably the leading case in New Jersey which construes this provision. If a court finds a mortgage unenforceable, it may decide to entertain and grant requests to cancel the mortgage completely, absent collusion or fraudulent conduct by the mortgagor. *HIMC Investment Co. v. Siciliano*, 103 N.J.Super. 27, 39, 40, 246 A.2d 502 (Law Div.1968). In *Manzo Contracting Co., Inc. v. Warren Limestone Co., Inc.*, No. A–2774–72 (N.J.Super.Ct.App.Div. July 15, 1976), the court refused to enforce a mortgage which had been part of an illegal bidding arrangement. The equitable remedy of a mortgage foreclosure would not be available to parties who did not have clean hands, the court said. *Id.* at 20.

■ There is no specific provision within the Bankruptcy Act which would enable the Bankruptcy Court to set aside, or cancel, a mortgage, except in cases of fraudulent or preferential conduct. Instead, the trustee advocates reliance upon this Court's equitable powers as outlined in section 2a of the Bankruptcy Act (11 U.S.C. § 11[a]) [5] and described in *Pepper v. Litton*, 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939) by the late Justice Douglas:

> Any obligation on the part of a borrower arising out of a secondary mortgage loan shall be void and unenforceable unless such secondary mortgage loan was executed in full compliance with the provisions of this act.

reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's transferee for a present fair equivalent value: Provided, however, That where such purchaser or lienor has given less than such value, he shall nevertheless have a lien upon such property, but only to the extent of the consideration actually given by him. Where a preference by way of lien or security title is voidable, the court may on due notice order such lien or title to be preserved for the benefit of the estate, in which event such lien or title shall pass to the trustee. For the purpose of any recovery or avoidance under this section, where plenary proceedings are necessary, any State court which would have had jurisdiction if bankruptcy had not intervened and any court of bankruptcy shall have concurrent jurisdiction.

4. "Unenforceability of loan not in compliance with law"

5. Section 2a(15) of the Bankruptcy Act, in particular, states that:

The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

Make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title: Provided, however, That an injunction to restrain a court may be issued by the judge only;

The bankruptcy courts have exercised these equitable powers in passing on a wide range of problems arising out of the administration of bankrupt estates. They have been invoked to the end that fraud will not prevail, that substance will not give way to form, that technical considerations will not prevent substantial justice from being done.

The *Pepper* decision has been widely cited. Most courts have applied it to situations where officers, directors, or insiders had asserted claims against bankrupt corporations, and there was questionably fraudulent conduct by the corporate creditors. *In Re Mid-Town Produce Terminal, Inc.*, 599 F.2d 389 (10th Cir. 1979); *Frasher v. Robinson*, 458 F.2d 492 (9th Cir. 1972); *Matter of Dade County Dairies, Inc.*, 474 F.Supp. 438 (S.D.Fla.1979).

■ Despite its importance and widespread use, the *Pepper* decision is not dispositive of the issues here. General principles regarding equity which were articulated in *Pepper* are not necessarily applicable to the present facts. As already noted, cases invoking equitable doctrines arise primarily from fraudulent conduct, or where unfairness will result. The defendant has in no way shown that fraud existed here. Moreover, he has failed to demonstrate that injustice will result if the mortgage foreclosure occurs, for there has been no proof before the Court that N.R.P. does not have a validly executed and outstanding mortgage. The trustee's argument centers around the plaintiff's failure to produce the original mortgage, and the lack of record of the plaintiff of the mortgage on its books and records, and either demand for payment by the plaintiff, or receipt of payment from the bankrupt. However, it is well settled that proof of the recording of a mortgage creates a presumption of its delivery. *Thorpe v. Floremoore Corp.*, 20 N.J. Super. 34, 37, 89 A.2d 275 (App.Div.1952). Exhibit P–6 was admitted into evidence; it was a certified copy of the mortgage agreement between the bankrupt and Bank, the initial mortgagee, recorded in the Middlesex County Clerk's office. There has been no showing by the defendant of a previous discharge of the mortgage; therefore, it is presumptively effective and still in existence.

The remainder of the trustee's contention, that because the Smalls' mortgage was discharged without consideration, then the Sumners' mortgage should also be cancelled, is not persuasive. It is not clear why the Smalls' mortgage was cancelled, but the defendant has not shown that there was any fraud or bad faith on the part of either Small or the plaintiff in discharging the obligation, or certainly none which would imply a legal or equitable responsibility to cancel or discharge the Sumners' mortgage.

■■ There is nothing in the record of this case which convinces the Court of either the absence of a valid mortgage, or of the equitable requisites to set it aside by Court order. The plaintiff will be permitted to proceed with foreclosure on the premises known as 71 Buchanan Road, Edison, New Jersey, the real property mortgaged by Joseph and Rhoda Sumner to Bank and assigned to N.R.P., joining the trustee as a party defendant in such action.

It is so ORDERED. Let a judgment in conformity with this opinion be entered.