In re Troy Lee JAMES, Debtor.

In re McDavid HATHORN, Debtor.

In re Marilyn BLACKSHER, Debtor.

In the Matter of Rebecca R. BROWN, Debtor.

FEDERAL LAND BANK OF ST. PAUL, Plaintiff,

v.

Rebecca R. BROWN, Defendant.

Bankruptcy Nos. 81–04754–G, 81–04163–G, 81–06484–G and 81–07213–G.

Adv. No. 82–0172.

United States Bankruptcy Court, E. D. Michigan, S. D.

May 19, 1982.

W. Stanley Fambrough, Detroit, Mich., for plaintiff First Federal Savings & Loan Association.

David W. Ruskin, Southfield, Mich., for debtors in Nos. 81–04754–G and 81–04163–G.

Hecht & Cheney, Grand Rapids, Mich., for plaintiff Mortgage Associates.

Patrick J. Conway, Detroit, Mich., for debtor in No. 81–06484–G.

Bruce N. Elliott, Conlin, Conlin & McKenney, Ann Arbor, Mich., for plaintiff.

Stuart A. Gold, Southfield, Mich., for defendant.

## OPINION

RAY REYNOLDS GRAVES, Bankruptcy Judge.

The question presented by these consolidated cases is simply stated: May a bankruptcy court issue an order pursuant to 11 U.S.C. § 105 which tolls a state statutory period of redemption so as to allow the Chapter 13 debtor to reinstate the terms of the mortgage in default in the plan pursuant to 11 U.S.C. § 1322(b)(5)?

This Court finds that 11 U.S.C. § 105 does not empower a bankruptcy court to toll a state statutory period of redemption so as to enable a Chapter 13 debtor to reinstate the terms of the mortgage in default in the plan pursuant to 11 U.S.C. § 1322(b)(5).

This Opinion discusses four separate cases, submitted on briefs and oral argument, which have been consolidated for purposes of resolution of this common question: *In re Troy Lee James*, 81–04754; *In re McDavid Hathorn*, 81–04163; *In re Marilyn Blacksher*, 81–06484; and *In re Rebecca R. Brown*, 81–07213. The facts giving rise to this cause are as follows:

### TROY LEE JAMES

Ulysses and Annie Black, husband and wife, gave a mortgage on residential property to General Mortgage Corporation. The date of this mortgage is unknown. On July 28, 1970, General Mortgage Corporation assigned the mortgage of Mr. and Mrs. Black to First Federal Savings and Loan Association. Both the assumption and the assignment were properly recorded. Troy Lee James (hereinafter referred to as the Debtor) and his wife assumed a mortgage from Ulysses and Anna Black on November 8, 1976.

The Debtor, Troy Lee James, subsequently defaulted on the mortgage payments, and on January 15, 1981, First Federal commenced foreclosure proceedings pursuant to M.C.L.A. § 600.3101 *et seq.* Sale at public auction took place on February 20, 1981, and the six month statutory period thus began to run.

On August 18, 1981, two days before the expiration of the statutory redemption period, Debtor filed a Chapter 13 petition. A temporary restraining order issued and First Federal was "restrained from commencing or continuing any further foreclosure proceedings against the security. . . ." However, this Order did not contain any language to the effect that the statutory redemption period was to be tolled.

When Debtor failed to redeem the property by August 20, 1981, First Federal commenced an action to evict the Debtor on August 28, 1981. The writ of eviction was stayed until October 21, 1981 by agreement of counsel. On November 17, 1981, Debtor's counsel moved the Court to toll the statutory period of redemption. This matter was taken under advisement.

### McDAVID HATHORN

The Debtor, McDavid Hathorn, and his wife executed a note and mortgage on July 7, 1976, with First Federal as mortgagee. The mortgage secured the Debtor's residence, and was properly recorded on July 13, 1976. The Debtor subsequently defaulted and on April 15, 1981 First Federal commenced foreclosure proceedings pursuant to M.C.L.A. § 600.3101 *et seq.* Sale at public auction took place on June 9, 1981, at which First Federal was the purchaser. A sheriff's deed was conveyed to First Federal on that same day.

The Debtor's statutory redemption right extended through December 9, 1981. The Debtor did not exercise this right, but instead filed a Chapter 13 petition on July 17, 1981. On that same day, a temporary restraining order issued restraining First Federal "from commencing or continuing any further foreclosure proceeding against the security. . . ." A hearing on Debtor's motion to toll the statutory redemption period was held on November 17, 1981, and was thereupon taken under advisement.

### MARILYN BLACKSHER

The Debtor, Marilyn Blacksher, gave a mortgage on her residence to Mortgage Associates, Plaintiff herein, the date of such transaction being unascertainable from the parties' pleadings. Debtor subsequently de-

faulted on her loan obligation, and the property was sold at a foreclosure sale on November 17, 1981. The statutory redemption period thus extends through May 17, 1982.

On January 28, 1982, Debtor filed a Chapter 13 petition and on February 2, 1982, filed with this Court a petition to toll the period of redemption. This matter was taken under advisement.

REBECCA R. BROWN

On October 16, 1979, the Debtor, Rebecca R. Brown, and her husband gave a note and a mortgage to Federal Land Bank of St. Paul, the Plaintiff creditor herein. Debtor subsequently defaulted on the loan and Plaintiff purchased the property at the August 26, 1981 foreclosure sale. The statutory redemption period thus expired on February 26, 1982.

On December 17, 1981, Debtor filed a Chapter 13 petition. On February 8, 1982, prior to the expiration of the statutory redemption period, Bank filed written objections to the Debtor's plan and commenced this adversary proceeding for relief from the automatic stay of 11 U.S.C. § 362.

Section 1322(b)(5) allows the cure of any default within a certain period of time:

(b) Subject to subsection (a) and (c) of this section, the plan may—... (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due....

Section 105(a), on the other hand, allows the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The Debtors at bar would have this Court believe that Sections 1322(b)(5) and 105(a) support the proposition that a mortgage in default may properly be revived and the original terms reinstated in the plan of reorganization, especially where it is averred that the properties are necessary to an effective reorganization. This proposition, however, finds no basis in law or in equity.

First, Section 1322(b)(5) directly affects state-created property rights:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'

*Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) *quoting Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961). Under Michigan law, a purchaser at a foreclosure sale takes the property subject to the mortgagor's right of statutory redemption. *Ledyard v. Phillips*, 47 Mich. 305, 11 N.W. 170 (1882). The title thus conveyed to the purchaser is all the right, title and interest in the mortgaged premises which the mortgagor possessed when the mortgage was executed. *Stolte v. Krentel*, 271 Mich. 98, 260 N.W. 127 (1935). This title vests in the purchaser only upon the expiration of the statutory redemption period. *Bankers Trust Co. of Detroit v. Rose*, 322 Mich. 256, 33 N.W.2d 783 (1948). The mortgagor retains a significant amount of interest in the premises in addition to its statutory right of redemption; specifically, the mortgagor retains the right to possession and the right to rents and profits until the redemption period expires. *Heimerdinger v. Heimerdinger*, 299 Mich. 149, 299 N.W. 844 (1941). The purchaser at the foreclosure sale also has an interest to be protected. He is entitled to the expectation of full title upon the expiration of the redemption period. A purchaser should not be burdened with the unbargained for uncertainty of an indefinite redemption period which may adversely affect his right to expect the terms and conditions of the sale to be fulfilled.

Section 1322(b)(5), apparently allows a mortgage in default to be cured and the original terms thereof reinstated in the plan when the last payment on the mortgage is due "after the date on which the final payment under the plan is due." 11 U.S.C. § 1322(b)(5). The legislative history unequivocally states that "a claim secured by the debtor's principal residence may be treated with under § 1322(b)(5). . . ." 124 Con.Rec. H 11,106 (Sept. 28, 1978); S 17,423 (Oct. 6, 1978). This section is applicable only where the debtor/mortgagor's equity of redemption has not been foreclosed. Because a foreclosure sale under Michigan law extinguishes the mortgage and transfers legal title to the purchaser, *Ledyard v. Phillips, supra*, the mortgagor is left with its statutory right to redeem from the sale within six months thereof pursuant to M.C. L.A. § 600.3140 *as amended by* 1970 P.A. 86 (1971). Therefore, payment can no longer occur in accordance with the due date on the mortgage but, at the most, can only be made within six months from the date of foreclosure as statutorily prescribed. Hence, by its own terms § 1322(b)(5) is inapplicable since that statute requires fulfillment of the terms of the plan prior to the date of the final payment under the mortgage. The principle has been most succinctly stated that "debtors cannot reactivate a mortgage that was already merged into a judgment of foreclosure before the debtors filed their Chapter 13 petition. . . . [A] Bankruptcy Court 'cannot cultivate rights where none can grow.' " *In re Canady*, 9 B.R. 428, 430 (Bkrtcy.D.Conn.1981) *quoting In re Butchman*, 4 B.R. 379, 381 (Bkrtcy.D.N.Y.1980).

As to the individual Debtors in the case at hand, their respective properties were sold at foreclosure sales and their mortgages extinguished thereby, all occurring prior to the filing of their Chapter 13 petitions. Because payments can no longer be made in accordance with the due dates on the mortgages, the inevitable conclusion is that the terms of their respective mortgages cannot be reinstated in their proposed plans of reorganization under § 1322(b)(5).

Counsel for the Debtors further argue that even if § 1322(b)(5) precludes an opportunity for cure, this Court should nevertheless exercise its equitable powers under 11 U.S.C. § 105 and issue an order tolling Michigan's statute of redemption in order to allow the Debtors to make current their arrearages and to continue to make monthly mortgage payments while under the protective umbrella of Chapter 13. This Court is unwilling to transcend the boundaries within which we may exercise our equity powers and, therefore, we find that Section 105 does not authorize this Court to toll a state statutory period of redemption.

Although a bankruptcy court is a court of equity, *Hunter Sav. Ass'n v. Georgetown of Kettering Ltd.*, 14 B.R. 72 (Bkrtcy.D.Ohio 1981), and as such may invoke equitable principles, *In re M&M Transp. Co.*, 13 B.R. 861 (Bkrtcy.D.N.Y. 1981), limitations on the exercise of those equitable powers do in fact exist.

Bankruptcy Code § 105(a) upon which Debtor's rely, provides: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The legislative history to this Code provision states that § 105 is derived from § 2(a)(15) of the Act. The same principles of equity and limitations thereon that exist under the Code also existed under the Act. "A bankruptcy court is a court of equity . . . as is guided by equitable doctrines and principles except insofar as they are inconsistent with the Act." *SEC v. United States Realty and Investment Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293 (1940).

Section 2(a)(15) of the Bankruptcy Act was viewed as an express legislative sanction of the bankruptcy court's power to enjoin actions of parties. *In re Lustron Corp.*, 184 F.2d 789 (7th Cir. 1950); *Boston Terminal Co. v. Mutual Savings Bank Group*, 127 F.2d 707 (1st Cir. 1942). That Section 2(a)(15) was intended to affect parties' actions rather than state statutes is clear: "The chief test under . . . § 2(a)(15) appeared to be whether or not the proceed-

ing· in the nonbankruptcy court sought to be enjoined interfered with the possession or custody of the bankruptcy court or unduly impeded or embarrassed the court in its administration under the Act." 2 *Collier on Bankruptcy* at 105–4 (15th ed.).

Section 105 of the Bankruptcy Code, 11 U.S.C. § 105, retained this broad grant of equitable powers, but at the same time caution is urged. "The basic intention of the section is to enable the bankruptcy court to do whatever is necessary to aid its jurisdiction, i.e., anything arising in or relating to a bankruptcy case." 2 *Collier on Bankruptcy* at 105–4 (15th ed.). Debtors at bar do not put forth any evidence of interference with or impairment of this Court's jurisdiction. Rather, Debtors would have this Court interfere with a State's legislative judgments concerning the rights of parties to a mortgage agreement, and no compelling justifications for such interference exist.

The Debtors in these cases are asking the Court to enter into a revision of state law. This proposed revision of state law is properly the concern of the Michigan Legislature. If Michigan wishes to extend the time for redemption of property after a foreclosure sale, it is well within the province of the Michigan Legislature to pass such a bill and the Governor of the State of Michigan to sign it into law. The Legislature's silence on this issue is a clear indication to the Court of a disinclination to change the six month redemption period.

Cases invoking equitable principles and relief generally involve situations where fraudulent conduct has occurred, or where a manifest injustice would occur absent equitable relief. *In re Sumner*, 4 B.R. 560 (Bkrtcy.D.N.J.1980). "Equity is available to protect property rights of the innocent debtor from the wrongful acts of other persons; however, equity does not extend to situations in which the debtor is simply unable to make the required payment within the prescribed time." *In re Headley*, 13 B.R. 295 (Bkrtcy.D.Colo.1981).

The decision of the United States District Court for the Eastern District of Michigan in *Bank of the Commonwealth v. Bevan*, 13 B.R. 989 (1981) holds, in part, that §§ 105 and 108 of the Code grant Bankruptcy Courts the authority to stay the running of the redemption period for sixty days.[1] *Bevan* does not discuss the ordinary meaning of the words contained in § 108(b) or its affect on Michigan's Statutory Redemption Period. An ordinary reading of § 108(b) reveals no express or specific provision granting Bankruptcy Courts the authority to stay the running of the State's redemption period, for sixty days as suggested in *Bevan*, or indefinitely as urged by the Debtors in the instant cases. It may be argued that 108(b) gives this Court the authority to enter a sixty day stay so that the Debtor may cure a default. But this argument must give way to the state protected property interest and the deference federal courts must give to state law in this case. Under state law there is no default to be cured after the mortgaged premises have been sold at a foreclosure sale. The Debtor's only remedy is to make full payment of the price of the successful bid at the foreclosure sale. The opportunity to cure the default exists after foreclosure, but before foreclosure sale. Section 108(b) cannot be read to revive the opportunity to cure a default after the foreclosure sale, without abrogating clearly established state law. We are not willing to rewrite the foreclosure statute of the State of Michigan.

With respect to the case under consideration, no wrongful acts, fraud or unfairness have occurred. Debtors freely entered into arms length mortgage loan agreements

[1]. § 108(b) Except as provided in subsection (a) of this section, if applicable law, an order entered in a proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; and

(2) 60 days after the order for relief.

with their respective creditors. At the time the notes and mortgages were executed the Plaintiff creditors expected that payments would be timely made, while the Debtors expected that they would possess their premises conditioned upon the ability to satisfy the loan obligations. Upon foreclosure sale, Michigan law allows the Debtors as a matter of privilege six months to redeem from the sale. The purchasers at the sale, Plaintiffs herein, have the right to expect either repayment of the bid price together with accrued interest during the redemption period or the vesting of legal title at the expiration of the redemption period. Action by this Court which would thwart state policy and diminish the parties' expectations is not warranted by the facts presented. Thus, this Court may not issue an order pursuant to 11 U.S.C. § 105(a) which tolls Michigan's statutory redemption period.

An Order will be entered in accordance with this Opinion.