**In re Charles M. YOUNG, individually and d/b/a Sandy Land Potato, Debtor.**

**Charles M. YOUNG, Plaintiff,**

v.

**UNITED STATES of America, acting By and Through the FARMERS HOME ADMINISTRATION, Defendant.**

**Bankruptcy No. 84–09515.**
**Adv. No. 84–9131.**

United States Bankruptcy Court, E.D. Michigan, N.D.

April 29, 1985.

As Amended June 17, 1985.

John J. Hebert, Bay City, Mich., for plaintiff.

Michael Hluchaniak, Asst. U.S. Atty., Bay City, Mich., for defendant.

## MEMORANDUM OPINION REGARDING PLAINTIFF'S REQUEST FOR PRELIMINARY INJUNCTIVE ORDER

ARTHUR J. SPECTOR, Bankruptcy Judge.

The plaintiff is a potato farmer who filed Chapter 11 on November 28, 1984, when there were only two days remaining on his one year statutory right of redemption from the Federal Land Bank's mortgage foreclosure sale of his farm. On November 30, 1984, he filed this complaint seeking:

(A) a determination that § 108(b) of the Bankruptcy Code extended the redemption period 60 days from the date of the filing of the bankruptcy petition;

(B) a preliminary injunction enjoining the defendant Farmers Home Administration from taking possession of the farm (or any other property of the estate); and

(C) whatever other relief is appropriate.

The defendant opposed the request except that it admitted that § 108(b) extended the plaintiff's redemption period 60 days from November 28, 1984.

The request for a preliminary injunction was heard on January 4, 1985, and a briefing schedule was set. However, since the automatic 60-day tolling of § 108(b) would have expired on January 27, 1985, there was insufficient time to read the briefs and decide the issue. Had the redemption period expired while I was considering whether to enter an order extending it, the requested relief would have been issued too late to have any effect. Therefore, merely to maintain the legal status quo, and without prejudice to the parties' ultimate substantive arguments, a preliminary injunction entered on January 25, 1985, which continued the redemption period and restrained the defendant from taking possession of the property. I have now had sufficient opportunity to consider the legal issues raised (and more importantly, the Sixth Circuit Court of Appeals has now issued its long awaited opinion with respect to these issues, thus making my job immeasurably easier).

### FACTS

The plaintiff and his wife own (or owned) 672 acres of farmland in Tuscola County, Michigan. The Federal Land Bank has (or had) first mortgages thereon to secure indebtednesses aggregating $400,968.83 as of December 1, 1983. On that day, the Land Bank bid in that amount at the various sheriff's sales foreclosing its mortgages on the farm, and thereby obtained sheriff's deeds to the premises. On December 30, 1983, the Farmers Home Administration took an assignment of the Land Bank's sheriff's deeds (the properties were sold in separate parcels), in consideration of its payment of the bid price. At that time, and now, defendant had its own mortgage on the premises, junior to the Land Bank's, securing an obligation of its own in the approximate amount of $1,200,000.00. There is no question that the property is worth far less than the total indebtedness owed to the mortgagees.

On November 28, 1984, the plaintiff filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The plaintiff seeks to file a Chapter 11 plan which will provide either for redemption of the property from the sale or cure of the default and a deacceleration of the mortgage under § 1124.

### LAW

As a preliminary matter, the Court requested the parties to brief the question of whether the defendant's various rights to

the property became merged when it purchased the Land Bank's interest. The parties agree that the defendant's rights were not merged and therefore it still maintains its second mortgage on the premises, as well as the rights of the purchaser at the mortgage foreclosure sale.

■ Upon the filing of the bankruptcy petition, the time for redeeming the property from foreclosure was automatically extended by § 108(b). *In re Glenn,* —— F.2d tended by § 108(b). *In re Glenn,* 760 F.2d 1428 (6th Cir. 1985); *In re Rutterbush,* 34 B.R. 101, 9 C.B.C.2d 1272 (E.D.Mich.1982); *Bank of Commonwealth v. Bevan,* 13 B.R. 989, 7 B.C.D. 557, 6 C.B.C.2d 699 (E.D.Mich. 1981); *In re Owens,* 27 B.R. 946, 10 B.C.D. 444 (Bankr.E.D.Mich.1983). Had it not been extended by the Court, that period would have expired on January 27, 1985. The plaintiff maintains that *Bevan* held that a bankruptcy court may utilize § 105 to extend the redemption period and that *In re James,* 20 B.R. 145, 9 B.C.D. 208 (Bankr.E. D.Mich.1982) and *In re Rutterbush, supra,* which held that § 105 is unavailable for such purposes, are wrongly decided and should not be followed.

Whatever doubt existed about the wisdom of Judge Graves' thoughtful and oft-cited opinion in *James* with respect to § 105 should be forever silenced now that the Court of Appeals has cited it approvingly and confirmed its holding. *In re Glenn,* at 1441. Section 105 simply does not permit a bankruptcy court "to create substantive rights which do not exist under state law." *Johnson v. First National Bank,* 719 F.2d 270, 274 (8th Cir. 1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). *James* held that under Michigan law, no substantive right exists to extend the statutory period of redemption absent fraud, accident or mistake and § 105 did not permit the bankruptcy court to extend the redemption period contrary to state law.

The Court of Appeals reached the same conclusion in *Glenn:*

"Moreover, 11 U.S.C. § 105(a) does not empower the courts to issue separate orders tolling statutory redemption periods absent exceptional circumstances such as fraud, mistake, accident, or erroneous conduct." At 1442.

■ The plaintiff argues that Michigan law does not prohibit extending the period of redemption because, contrary to the assertion in *James,* a foreclosure sale neither terminates the mortgagor's title to the property nor passes that title to the purchaser. In support of this proposition, the plaintiff cites *Bankers Trust Co. v. Rose,* 322 Mich. 256, 33 N.W.2d 783 (1948) and *Gerasimos v. Continental Bank,* 237 Mich. 513, 212 N.W. 71 (1927). However, those cases held that bare legal title only to the premises remains in the mortgagor, while the equitable title is transferred to the purchaser upon a foreclosure sale:

After foreclosure was had and the property deeded by the sheriff to the highest bidder, plaintiffs' equity of redemption was lost and only a right of redemption during the statutory period remained.

"The equity of redemption is that interest in the land which is held by the mortgagor before foreclosure; while the right of redemption is not an interest in the land at all, but a mere personal privilege given by statute to the mortgagor after the land has been sold under the mortgage." 2 Jones on Mortgages (7th Ed.), § 1038(a).

*Gerasimos v. Continental Bank,* 237 Mich. at 518–519, 212 N.W. 71. The mortgage itself is terminated because the mortgagee is paid the liquidation value of the premises. While the mortgagee is frequently the purchaser, his rights thereafter are merely as the purchaser.[1]

A foreclosure of a mortgage extinguishes it. When the amount due under the mortgage is paid to the mortgagee by the purchaser at the sheriff's sale, the

---

1. If the property is sold for a sum insufficient to cover all of the indebtedness, and if the underlying obligation is with recourse, then the mort-

gagee is also a holder of a further claim against the obligor for the unsatisfied balance.

lien is destroyed, and the purchaser becomes the owner of an equitable interest in the mortgaged premises, which ripens into a legal title if not defeated by redemption as provided by law. It is not a 'lien, incumbrance or mortgage' which the purchaser at a foreclosure sale acquires, but it is an interest or title, equitable in character, and with nothing to be done on his part to make it absolute if it is not redeemed within the period of time prescribed by law.

*Dunitz v. Woodford Apartments Co.*, 236 Mich. 45, 49, 209 N.W. 809 (1926). In short, these cases do not in any way detract from the *James* holding. A foreclosure sale does effect a transfer of title: equitable title. The mortgagor retains a mere statutory right of redemption which has a finite lifetime. Upon the termination of that time period, full legal title ripens in the purchaser. Here, the Federal Land Bank was the purchaser of the property at its own foreclosure sale. Shortly thereafter it transferred its right as a purchaser to the defendant. In this action, the defendant is clothed with the rights of any other purchaser at a duly conducted foreclosure sale, that is, the right to obtain full legal title upon the expiration of the period of redemption, unless the plaintiff can interpose a claim for extension thereof based upon "fraud, mistake, accident or erroneous conduct". *Glenn*, at 1442. Since plaintiff's complaint has alleged nothing which even colorably resembles a claim for equitable relief under the grounds of fraud, mistake, accident, or erroneous conduct, the complaint is insufficient as a matter of law. As a consequence of denying the plaintiff's request for an extension of the redemption period, the period would have expired as an operation of law on the dawn of January 28, 1985, and therefore the plaintiff can no longer claim an interest of any sort in the property in question.

The plaintiff argues that since *Bevan*, *James*, and *Rutterbush* (and, for that matter, *Glenn*) are all Chapter 13 cases, they are inapplicable to the determination of the debtor's rights to deaccelerate a secured claim in his Chapter 11 proceeding. The distinction which the plaintiff urges us to make but which we decline to accept, fails to further his cause, for two reasons. First, to the extent that the above-cited cases, particularly *Glenn*, address whether redemption periods may be extended by § 108(b), or not extended by § 105(a) or § 362(a), those cases are relevant to either Chapter 11 or Chapter 13. Second, even though the debtor correctly notes that a Chapter 11 debtor's rights to cure defaults and deaccelerate debts are materially different from those of a Chapter 13 debtor, this fails to help him on the facts of this case.

As explained in *Glenn*, Congress was confronted with competing policy objectives when drafting § 1322(b): the protection of the homeowner debtor and the maintenance of a viable residential construction and mortgage lending industry. The resulting compromise is reflected in § 1322(b)(2) and (5).

> (b) Subject to subsections (a) and (c) of this section, the plan may—
>
> > (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims
> >
> > . . .
> >
> > (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

In developing its interpretation of the statute, the Court adopted a pragmatic approach that went beyond the nuances of statutory construction or reliance on the laws of the various states regarding when a mortgage is extinguished or merged. Instead, it laid down a clear line of demarcation. Before there has been a foreclosure sale, the debtor may deaccelerate the debt and resume payments under the mortgage;

once the sale occurs, the creditor is no longer the holder of a claim which may be restored to its original terms.

It may be argued that the Sixth Circuit intended to say only that when a foreclosure sale has occurred the claim is no longer one secured by real property that is the debtor's principal residence on which the last payment is due after the termination of the debtor's plan. Under this interpretation, the decision might be limited to Chapter 13 cases, as the deacceleration provision in Chapter 11, § 1124(2), allows a debtor to cure a pre-petition default and restore an accelerated claim to its original maturity without regard to whether the debt is secured by the debtor's residence or when the last payment is due.[2]

■ However, we feel that the opinion can be interpreted more broadly to mean that once a foreclosure sale has occurred, the purchaser is simply not the holder of a claim[3] at all, as that term is defined in the Bankruptcy Code Section 101(4):

(4) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

The purchaser at a foreclosure sale enters into no contract or any other transaction with the debtor which would give the former a "right to payment" from the latter. Neither does the purchaser have a right to an "equitable remedy for breach of performance" as that term is defined above, as the only breach occurred prior to the sale. The purchaser at the sale, even if it is the mortgagee, has no right to payment; it has equitable title which will ripen into full legal title unless the redemption price is paid, but the purchaser cannot demand payment from the mortgagor. Thus, the purchaser's rights are not subject to modification under § 1124(2).

The above analysis is consistent with the approach utilized in *Glenn*. The Sixth Circuit intended to establish a bright line by which the mortgagor, mortgagee and pur-

---

2. § 1124. Impairment of claims or interests

Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—

(A) with respect to a claim, the allowed amount of such claim; or

(B) with respect to an interest, if applicable, the greater of—

(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or

(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

3. Section 1124 refers to "claim[s] or interest[s]" which may be impaired by the plan. An "interest" is nowhere defined in the Code. However, this Court understands the term to refer to equity security interests of shareholders and bondholders. This finding is supported inferentially by the language in Bankruptcy Rules 3003(b) and (c).

chaser can easily determine which claims may be deaccelerated and which may not. For the reasons stated on pp. 1435–36 of that opinion it held that the foreclosure sale was best suited as the appropriate event to cut off the debtor's right to deaccelerate. We see no reason why the same bright line should not also be applied in Chapter 11 cases, and the tenor of the Sixth Circuit's opinion makes us confident that had it been faced with this issue, it would have reached the same conclusion.

In the present case the foreclosure sale occurred well before the petition for relief and the redemption period would have expired but for the preliminary injunction entered by this Court pending resolution of this question of law. Accordingly, we hold that there is no claim or interest in the property which is subject to deacceleration under § 1124(2).

Finally, even though § 1322(b) and § 1124 speak to similar substantive rights of a chapter debtor, those rights cannot be read in a vacuum. So long as a right cognizable by state law exists in some property, then it can be argued that the debtor has the right to modify liens thereon. However, the plaintiff's argument does not address the context in which a Chapter 11 debtor frequently finds himself upon the filing or attempted confirmation of a Chapter 11 plan. As in the case at bar, although a debtor may have the theoretical right to cure a default and deaccelerate a secured claim, that theoretical right exists only so long as the debtor has an interest in the property. As is now firmly established by *Glenn,* § 362(a) effectuates no tolling of the redemption period, and § 105 is unavailable as an alternative. Extension of the redemption can be no greater than that permitted by § 108(b), absent exceptional circumstances. Therefore, in most cases where the foreclosure sale precedes the filing of the bankruptcy case, the statutory right of redemption will expire prior to the hearing on confirmation of a plan, be it in a Chapter 13 or a Chapter 11 case. At the time the proposed order confirming the plan is likely to be considered, there would be no interest left in the prop-

erty in question to serve as a predicate for the deacceleration relief requested. To a large extent, this rationale folds over into the previous one, in that upon the finalization of the foreclosure sale, no "secured claim" exists. No matter how termed, the debtor's theoretical right to deaccelerate the secured claim ceases to have any practical utility when the secured claim ceases to exist. In this case, that means at the time the foreclosure sale is completed. *In re James, supra; Dunitz v. Woodford Apartments Co., supra.*

For these reasons, the Court will enter an order denying the plaintiff's request for a preliminary injunction. This order shall supersede the Court's order of January 25, 1985 and shall indeed vacate it.