In re Cecil W. McCALLEN and Bessie McCallen, dba McCallen Equipment Rental Co.; dba McKay Creek Farm, Debtors.

Bankruptcy No. 383–04278.

United States Bankruptcy Court,
D. Oregon.

June 11, 1985.

Kenneth Solomon, Beaverton, Or., for debtors, McCallen.

Steven Orcutt, Portland, Or., for movants, John and Shirley Welch.

J. Stephen Werts, Portland, Or., for Great American Ins. Co.

Christine Kitchel, Portland, Or., for Ticor Title Ins. Co.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

John and Shirley Welch ("Welch") have requested relief from the automatic stay (11 U.S.C. § 362) in order to allow them to complete a strict foreclosure of a land sale contract wherein they sold the Debtors certain real property known as McKay Creek Farm. The Circuit Court for the State of Oregon for Washington County ("State Court") granted the Debtors until December 31, 1983 to redeem the property. The day before the expiration of the redemption period, the Debtors filed their petition under Chapter 11 of the Bankruptcy Code (11 U.S.C.). The sole issue before the Court is whether the Debtors' interest in McKay Creek Farm terminated sixty days after the filing of Chapter 11 by virtue of 11 U.S.C. § 108(b). (All statutory references hereafter are to the Bankruptcy Code (11 U.S.C.) unless otherwise indicated).

In 1977 Welch and the Debtors executed a land sale contract covering McKay Creek Farm. The Debtors agreed to pay Welch a total of $735,000, of which the Debtors paid $150,000 as a down payment and agreed to pay the balance in annual payments of $78,875. When the Debtors failed to make the payment due on November 1, 1982, and defaulted on certain other obligations under the land sale contract, Welch filed suit for strict foreclosure of the contract. On July 25, 1983, the State Court entered a stipulated interlocutory decree of strict foreclosure. Under the terms of the decree, the State Court granted the Debtors until December 31, 1983 to pay Welch $385,000 plus interest, costs and attorney fees. If the Debtors failed to pay as required, Welch could make ex parte application for a final decree of strict foreclosure. On December 30, 1983, the Debtors filed Chapter 11.

Welch has moved for relief from the automatic stay on the basis that the Debtors' right to redeem expired sixty days after the Debtors filed Chapter 11 by virtue of § 108(b) and consequently the Debtors no longer have an interest in McKay Creek Farm. Welch relies upon a long line of cases holding that the automatic stay provided by § 362(a) does not toll the running of a statutory redemption period when foreclosure by judicially ordered sale has occurred prior to bankruptcy. See e.g., *Johnson v. First National Bank of Montevideo, Minn.* (hereinafter "*Johnson*"), 719 F.2d 270 (8th Cir.1983) *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); *In re Cucumber Creek Development, Inc.,* 33 B.R. 820 (D.Colo.1983); *In re Petersen,* 42 B.R. 39 (Bankr.D.Or.1984). These cases, relying on § 108(b), hold that the only effect that the filing of bankruptcy has on the duration of a statutory right of redemption is to extend the redemption period for sixty days from the date bankruptcy is filed.

Cases such as *Johnson, Cucumber Creek,* and *Petersen* have found § 362(a) to be inapplicable to the running of statutory redemption rights for two basic reasons. First, under applicable state law:

no legal "act" or "proceeding" within the meaning of § 362(a)(1)–(8) is required of a party after a sale of the property to consummate the acquisition of clear title in the hands of the purchaser at the end of the redemption period. Such acquisition results solely from the passage of time. The words Congress chose to describe the matters stayed by § 362 evoke an image of the requirement of a positive legal step. *In re Petersen, supra* at 40.

See also *Johnson, supra* at 276. Second, under applicable state law:

"It is only the right of redemption, rather than the property itself, which passes into the bankruptcy estate if the redemption period has not expired at the time of [sic] the bankruptcy petition is filed." *Johnson, supra* at 276.

The Debtors and one of the Debtors' creditors, Great American Insurance ("GAI") and GAI's assignee, Ticor Title Insurance Company ("Ticor") argue that because of differences between the nature of vendee's interest during the Court created redemption period and the nature of the interest of a holder of a statutory redemption right, § 108(b) did not cause the termination of the Debtors' interest in McKay Creek Farm sixty days after filing. They further argue that even if § 108(b) is applicable, this Court can and should extend the redemption period by utilizing its equitable authority under § 105.

Only two cases have discussed the effect of § 108(b) on Court created redemption rights in strict foreclosure actions. *In re St. Amant,* 41 B.R. 156 (Bankr.D.Conn. 1984) involved a procedure available under Connecticut law to strictly foreclose a judgment lien. In holding that § 362(a) prevents the running of the Court created redemption period and that § 108(b) is not applicable the Court stated:

In a Connecticut foreclosure, entry of the foreclosure judgment works no change in title to the property. *City Lumber Co. of Bridgeport, Inc. v. Murphy,* [120 Conn. 16, 179 A. 339] *supra.* The land owner is divested of his ownership in favor of the foreclosing lienor only when the redemption period expires. *Id.* In Connecticut, when a bankruptcy petition is filed during the redemption period, it is the ownership of the property which passes into the estate and not merely a statutory post-sale redemption right subject to extinction by the passage of the statutory period.... Consequently, it is a transfer of ownership, rather than the extinction of a statutory right by its own terms, which is worked by the passing of the "law day." ["Law day" is the end of the Court created redemption period]. This transfer of ownership is not accomplished by operation of a statute but by the litigated terms of the creditor's foreclosure judgment. As a result, "the operation of [the foreclosure] judgment voluntarily and deliberately obtained and pursued to a culmination," *City Lumber Co. of Bridgeport, Inc.,* 120 Conn. at 25–26, 179 A. at 343, is considered to be the creditor's appropriation of the land towards payment of the debt it secures, *Id.*

In the light of Connecticut strict foreclosure procedure, I am convinced the involuntary transfer of ownership worked by the terms of the strict foreclosure judgment is the very thing which § 362(a) was designed to prevent. *Id.* at 163.

An unreported decision, *In re JJ & L Properties, Inc.,* Case No. 683–07572 (Bankr.D.Or.10/13/83) (Luckey, J.), implied a contrary conclusion. The issue before the Court in the *JJ & L Properties* case was whether the Bankruptcy Court should grant the Debtor's motion to extend the redemption period established by an interlocutory decree of strict foreclosure of a land sale contract. The Court held that it had the power to extend the redemption period and granted a short extension. Since the parties apparently agreed that § 108(b) was applicable to a Court created redemption period established in a strict foreclosure action, the Court did not ad-

dress the question before this Court of whether § 108(b) limits the Debtor's ability to retain property as to which an interlocutory decree of strict foreclosure establishing a redemption period has been entered prior to the filing of bankruptcy.

In order to determine the issue before this Court, one must examine the nature of the Debtors' interest during the redemption period. During the Court created redemption period, the vendee retains the right to possession of the property. *Macomber v. Waxbom*, 213 Or. 412, 325 P.2d 253, 255 (1958). Under Oregon law, "a decree of strict foreclosure is not a decree which immediately, finally and completely cuts off the vendee's equitable interest in the property." *Blondell v. Beam*, 243 Or. 293, 413 P.2d 397, 399 (1966); *Lorenzen v. Jackson*, 284 Or. 251, 586 P.2d 341, 344 (1978). Courts possess the power under appropriate circumstances to set aside even a final decree of strict foreclosure. *Slipp v. Amato*, 231 Or. 512, 373 P.2d 673, 674 (1962). In order to complete a strict foreclosure the vendor must take positive action, it must apply to the State Court for entry of a final decree of strict foreclosure.

The nature of a debtor's interest following a sheriff's sale has been described as follows:

The Oregon execution procedure, O.R.S. 23.410–23.600, allows the judgment debtor to redeem the property within one year of the date of its sale upon payment of the purchase money, any accrued interest and any taxes and prior liens the purchaser may have been required to pay. The redeemer must give the purchaser not more than 30 days notice of his intent to redeem. During the redemption period the purchaser is entitled to possession of the purchased property (unless leased) and to the rents and profits therefrom. If redemption is not timely made, the purchaser is entitled to a sheriff's deed.

From the date of the sale the judgment debtor has only bare legal title to the property sold. He must take further legal steps to reacquire full title. *In re Petersen, supra* at 40.

Following a sheriff's sale, a debtor whose interest is sold has a limited right of redemption which expires after the passage of time. A debtor whose interest is being foreclosed under the Oregon strict foreclosure procedure has a different interest during the Court established redemption period. The debtor retains equitable title and the right to possession. The debtor's right to the property is terminated only after the vendor obtains a final decree of strict foreclosure from the State Court. The State Court has the authority under appropriate circumstances not to enter the final decree or to set aside a final decree it has entered. In short, despite the entry of the interlocutory decree of strict foreclosure, a debtor retains under Oregon law a real property interest which cannot be terminated without affirmative action.

Section 362(a) prevents the vendor from taking the positive legal step required to completely foreclose the vendee's interest. As pointed out by Judge Krechevsky in the *St. Amant* case,

The transfer of debtor's ownership of the property pursuant to the litigated terms of movant's foreclosure judgment is "the ... continuation ... of ... a [foreclosure] proceeding against the debtor that was ... commenced before the commencement of the case under this title," within the meaning of § 362(a)(1). It is "the enforcement, against ... property of the estate, of a [foreclosure] judgment obtained before the commencement of the case under this title," within the meaning of § 362(a)(2). It is "an[ ] act to obtain possession of property of the estate," within the meaning of § 362(a)(3). It is "an[ ] act to ... enforce an[ ] lien against property of the estate," within the meaning of § 362(a)(4). And it is "an[ ] act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title," within the meaning of § 362(a)(6). *In re St. Amant, supra* at 163.

The cases relied upon by Welch specifically recognize that § 362(a) will toll the

running of the redemption period if affirmative action is required to eliminate the Debtors' ownership interest in the property.

"The opposite result [i.e., that § 362 does toll the running of the redemption period] has been reached in jurisdictions which require that some affirmative action be taken by a creditor or by a third party in order to transfer full title to property upon the expiration of the period of redemption." *Johnson, supra* at 277.

■ There is another reason why § 108(b) does not apply in this case. "[S]ection 108(b) does not apply to curing defaults in executory contracts. Section 365 specifically governs the time for curing defaults in executory contracts, and thus, it controls here." *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1215 (7th Cir.), *cert. denied,* — U.S. ——, 105 S.Ct. 386, 83 L.Ed.2d 321 (1984). Land sale contracts traditionally have been treated as executory contracts. See authorities cited in *In re Booth,* 19 B.R. 53, 54 n. 4 (Bankr.D.Utah 1982). *Booth* and several subsequent cases, see, e.g., *In re Britton,* 43 B.R. 605 (Bankr.E.D. Mich.1984); *Matter of Cox,* 28 B.R. 588 (Bankr.D.Idaho 1983); *In re Thurmond,* No. 683–07538 (Bankr.D.Or. Sept. 14, 1983), *aff'd,* 46 B.R. 723 (D.Or.1985), have held that under appropriate circumstances land sale contracts should be treated as liens. In deciding whether a land sale contract should be treated as an executory contract or a lien, "a policy of benefiting the estate, encouraging the debtors' rehabilitation and providing adequate protection for estate creditors is the lodestar ...". *In re Thurmond, supra* at 5 (Bankruptcy Court decision). McKay Creek Farm has an appraised value of $800,000. Thus the value substantially exceeds the approximately $400,000 obligation to Welch. The estate will be benefited and the Debtors' rehabilitation encouraged by treatment of the land sale contract as an executory contract. The Debtors are providing adequate protection through monthly payments equal to the accruing interest and real property taxes. Under the facts and circumstances of this case, the contract at issue should be treated as an executory contract and, therefore, § 365 not § 108(b) governs the time for curing defaults under the contract. Under § 365(d) the Debtors have until confirmation of their plan of reorganization to affirm the contract and make arrangements for curing of defaults.

In light of my conclusion that the automatic stay of § 362(a) has in this context tolled the redemption period provided in the interlocutory decree of strict foreclosure, I need not and do not reach the question whether the Debtors are entitled to an extension of the redemption period under § 105 of the Bankruptcy Code.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law in accordance with Bankruptcy Rules 7052 and 9014.