**In re Douglas A. CARR, Debtor.**

**Bankruptcy No. 85–07684.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Aug. 14, 1985.

James L. Rowe, Flint, Mich., for debtor Carr.

Brownell, Andrews, Philpott & Piper Randolph P. Piper, Flint, Mich., for Bradley J. Cotner and Barbara S. Cotner.

ARTHUR J. SPECTOR, Bankruptcy Judge.

## FACTS

Bradley J. and Barbara S. Cotner sold their home to Douglas A. Carr on a standard form land contract on September 15, 1981, which required the purchaser to pay to the sellers $220.64 in monthly installments until the $17,600 balance of the $22,000 purchase price was paid. The balance earns interest at 11% per annum. On December 21, 1984, the Cotners obtained a judgment of forfeiture in the state district court; on March 21, 1985, the debtor filed his petition for relief under Chapter 13 of the Bankruptcy Code.

## CONVEYANCE BY LAND CONTRACT IN MICHIGAN

This case arises out of a sale of real estate on land contract; under this mode of conveyance, the vendee obtains the right to possession of the premises, while the vendor retains the deed as security for payment. *In re Britton,* 43 B.R. 605 (Bankr. E.D.Mich.1984). If all goes according to plan, after the entire purchase price is paid, the vendor has a duty to deliver the deed to the vendee. A principal advantage of these transactions is that the purchaser may purchase realty without the necessity of obtaining mortgage financing. Such seller-financed sales are common in Michigan and, indeed, they are recognized by statute. Two separate means of enforcing land contracts have been enacted by the Michigan Legislature.

First, the seller has the right to bring an action for foreclosure of the land contract. Mich.Comp. Laws § 600.3101–3180; Mich. Stat.Ann. § 27A.3101–3180.[1] If the contract permits it, upon the default of the purchaser the seller will usually first accelerate the balance due and then bring suit in the Circuit Court requesting a judgment confirming the accelerated balance and ordering the sale of the property to satisfy the judgment. *Gruskin v. Fisher,* 405 Mich. 51, 63, n. 6, 273 N.W.2d 893 (1979). If the value of the property has substantially depreciated during the term of the contract, and if the purchaser is otherwise collectible, this method may result in a benefit to the seller, in that a deficiency balance will be collectible against the purchaser as would any other money judgment. *Id.* However, this remedy has been criticized as being, when compared with the other statutory remedy to be discussed below, "cumbersome, lengthy and therefore frequently ineffectual." *Id.* at 59, 273 N.W.2d 893. "There is no reason to bur-

---

1. This statute is entitled "Foreclosure of Mortgages and Land Contracts". Mortgagees have an additional remedy contained in a separate statute entitled "Foreclosure of Mortgages by Advertisement", Mich.Comp.Laws § 600.3201–3280; Mich.Stat.Ann. § 27A.3201–3280.

den the circuit courts with actions to foreclose land contracts. Land contract sellers should not be encouraged to commence such proceedings." *Id.* at 63, 273 N.W.2d 893.

█ Alternatively, the seller may use the more expedient method of enforcing its land contract rights through forfeiture and summary proceedings. This remedy is codified at Mich.Comp. Laws § 600.5701–5759; Mich.Stat.Ann. § 27A.5701–5759.[2] A seller must first send a purchaser a Notice of Forfeiture in the form prescribed by § 5728 which advises that the purchaser has 15 days to cure the defaults spelled out in the notice or the contract will be deemed forfeited. Thereafter, if the defaults have not been cured, the seller may file suit in a district or circuit court for *possession* of the premises. *Gruskin v. Fisher, supra* at 59, 273 N.W.2d 893. Trial is on an accelerated schedule. § 5735. If the seller prevails, he or she gets a judgment. This part of the enforcement remedy is defined as follows:

> If the jury or the judge finds that the plaintiff is entitled to possession of the premises, or any part thereof, judgment may be entered in accordance with the finding and may be enforced by a writ of restitution as provided in this chapter. If it is found that the plaintiff is entitled to possession of the premises, in consequence of the non-payment of any money due under a tenancy, or the non-payment of monies required to be paid under an executory contract for purchase of the premises, the jury or judge making the finding shall determine the amount due or in arrears at the time of trial which amount shall be stated in the judgment for possession. In determining the amount due under a tenancy, the jury or judge shall deduct any portion of the rent which the jury or judge finds to be excused by the plaintiff's breach of the lease or by his breach of 1 or more statutory covenants imposed by section

39 of chapter 66 of the Revised Statutes of 1846, as added, being section 554.139 of the Compiled Laws of 1948. The statement in the judgment for possession shall be only for the purpose of prescribing the amount which, together with taxed costs, shall be paid to preclude issuance of the writ of restitution. The judgment may include an award of costs, enforceable in the same manner as other civil judgments for money in the same court.

§ 5741. Note that this section is written to apply to landlord-tenant eviction cases as well as to land contract forfeiture cases. This serves to underscore the fact that the statutory remedy is only for *possession* of premises *after* forfeiture of the contract. *Durda v. Chembar Development Corp.*, 95 Mich.App. 706, 710, 291 N.W.2d 179 (1980).

The next section, § 5744, dictates that upon a prescribed period of time "after the entry of *judgment for possession*" (§ 5744(3)) the court "*shall issue a writ commanding the sheriff*, or any other officer authorized to serve the process, *to cause the plaintiff to be restored and put in full possession of the premises,*" (§ 5744(1)), if the purchaser fails to pay the judgment amount within the applicable time period. (Emphasis added). Where the purchaser has paid 50% or more of the purchase price, that period is six months; otherwise, it is 90 days. Again, note that the writ of restitution is directed toward obtaining "possession". If the purchaser timely pays the judgment amount, to either the vendor or the court, no writ may issue and the contract is reinstated to its pre-default status. § 5744(6); *Birznieks v. Cooper*, 405 Mich. 319, 275 N.W.2d 221 (1979); *VanElsacker v. Erzberger*, 137 Mich.App. 552, 357 N.W.2d 891 (1984); *Tenney v. Springer*, 121 Mich.App. 47, 328 N.W.2d 566 (1982). Noteworthy is that forfeiture does not permit acceleration of the full balance of the land contract, § 5726, *Gruskin v. Fisher, supra; Durda v. Chembar*

---

**2.** This statute is entitled "Summary Proceedings to Recover Possession of Realty" and includes the procedure for eviction in landlord-tenant

matters as well as the recovery of possession after forfeiture of land contracts.

*Development Corp., supra,* and that, therefore, the purchaser's only burden even after judgment is to cure the defaults and to pay the court costs, if taxed.

In the case at bar, the Cotners followed the forfeiture and summary proceedings route and obtained a judgment of forfeiture and possession in the competent state court. Mr. Carr filed his voluntary petition for relief under Chapter 13 on the 90th day of the redemption period.

The debtor claims that the Bankruptcy Code gives him the opportunity to pay the arrears and reinstate the land contract. The sellers claim that the expiration of the redemption time cut off the purchaser's right to cure the default and reinstate the contract. The determination of whether the debtor still possesses this right requires consideration of §§ 362 and 1322 of the Bankruptcy Code; examination of state statutory and case law interpreting and defining land contracts and the remedy of forfeiture and summary proceedings; and interpretation of a variety of bankruptcy law decisions, especially the recently decided Court of Appeals decision in *In re Glenn,* 760 F.2d 1428 (6th Cir.1985).

In *Glenn* the Court of Appeals held that a debtor's right to cure a default in a debt secured by a security interest—in that case, a mortgage—in his or her principal residence ceases when the property is sold at a foreclosure sale. It also held that neither the automatic stay of § 362(a) nor the court's inherent equitable power under § 105 of the Bankruptcy Code is effective to toll the running of a redemption time after the sale has been conducted. The difficulty we face here is that in a land contract forfeiture no sale is ever conducted. The movant argues that we should equate one of the important dates in the forfeiture continuum as the "date of sale" in *Glenn.* The debtor argues that *Glenn* is simply not applicable to these situations, and even if it is, we should equate the sale in *Glenn* to the issuance of a writ of restitution in the forfeiture situation.

Although land contracts are, strictly speaking, agreements which might be called executory until payments are completed and the deed transferred, such conveyances have been treated as security devices, creating a security interest in the vendor, both in practice and in the courts of this state. *In re Britton, supra; Barker v. Klingler,* 302 Mich. 282, 4 N.W.2d 596 (1942); *Hooper v. Van Husan,* 105 Mich. 592, 63 N.W. 522 (1895); *Rothenberg v. Follman,* 19 Mich.App. 383, 387, 172 N.W.2d 845 (1969). Thus, the land contract at issue constitutes a "security interest in real property that is the debtor's personal residence" as that term is used in Bankruptcy Code § 1322(b)(2). There are four significant dates in the land contract forfeiture process: (1) the 16th day after the notice of forfeiture is served on the purchaser; (2) the date the judgment of forfeiture and possession is entered; (3) the expiration of the period of redemption; and (4) the date the writ of restitution is issued. For the reasons which follow, we choose the date on which the applicable period of redemption expires as the cut-off date for the exercise of the debtor's right to cure defaults and reinstate the land contract.

Theoretically, the land contract ceases to exist and the seller is therefore entitled to possession on the 16th day after the service of the notice of forfeiture on the purchaser, if the default is not cured within that time. *Durda,* 95 Mich.App. at 710, 291 N.W.2d 179. However, the remedy of eviction cannot be exercised until the writ of restitution issues, and pursuant to § 5744(3), no writ can issue until after a lawsuit is commenced and won and the period of redemption has expired without exercise. *Id.* at 712, 291 N.W.2d 179; *Gruskin, supra.* Even though a judgment of forfeiture has been entered, the rights of the parties are not immutable. Section 5750 of the statute provides that a judgment of forfeiture

> ... does not merge or bar any other claim for relief, except that a judgment for possession after forfeiture of an executory contract for the purchase of premises shall merge and bar any claim for money payments due or in arrears under the contract at the time of trial

and that a judgment for possession after forfeiture of such an executory contract which results in the issuance of a writ of restitution shall also bar any claim for money payments which would have become due under the contract subsequent to the time of issuance of the writ....

Unlike a foreclosure sale, then, the forfeiture judgment does not terminate the parties' rights under the contract. The seller may choose other remedies, *cf. Gruskin, supra,* 405 Mich. at 67, 273 N.W.2d 893. Likewise, the buyer's timely payment of the judgment amount within the period of redemption actually reinstates the land contract and effectively vacates both the notice of forfeiture and judgment. *Birznieks v. Cooper, supra; VanElsacker v. Erzberger, supra; Tenney v. Springer, supra.* Thus, the parties are put back into their original contractual relationship which may continue for the duration of the land contract.

It is here where the difference between *Glenn's* date of sale and the 16th day after the service of the notice of forfeiture is apparent. When the land contract purchaser timely redeems, the parties are put back into the *status quo ante* the original contractual default. When a mortgagor redeems the property after a foreclosure sale, the original contract of mortgage is not resurrected: upon the sale, the mortgage irrevocably ceases to exist, as it is satisfied by the purchaser's payment. *In re James,* 20 B.R. 145, 148, 9 B.C.D. 208 (Bankr.E.D.Mich.1982). Instead, a third interest, that of the purchaser at the foreclosure sale arises, and the mortgagor's payment of the redemption price does nothing except return to the purchaser his investment with statutory interest. *In re Young,* 48 B.R. 678, 12 B.C.D. 1263, 12 C.B.C.2d 983 (Bankr.E.D.Mich.1985). The mortgagee has received whatever it is ever going to receive out of the property at the time of the sale itself and none of the redemption price is paid to it. Because of

the distinctly different legal and practical effects of the exercise of the right of redemption in these different types of remedies, the attempt to equate the 16th day after the service of the notice of forfeiture with the sale in a foreclosure is analytically flawed.

Our rationale may be criticized on the ground that it relies too heavily on the intricacies of state property law. After all, in *Glenn,* the court explicitly avoided

> ... any effort to analyze the transaction in terms of state property law. Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next. Thus, in construing this federal statute [11 U.S.C. § 1322(b)], *we think it unnecessary to justify our construction by holding that the sale "extinguishes" or "satisfies" the mortgage or the lien,* or that the mortgage is somehow "merged" in the judgment or in the deed of sale under state law.

760 F.2d at 1436 (emphasis added). Instead, the court made a *policy* decision that the line be drawn at the sale. *Id.* at 1435. We do the same when rejecting the earliest significant date in the forfeiture continuum. Were we to hold that the purchaser loses the valuable right under § 1322(b) to cure the default and reinstate the contract, we would encourage purchasers to file bankruptcy far too early. Potentially valid state law defenses would never be heard in the courts of competent jurisdiction; the purchaser wouldn't dare take the risk, because if its defenses are rejected, not only would its contract be forfeited, but it would lose the valuable right to seek effective relief in bankruptcy court. Well-counseled land contract purchasers would be advised to file Chapter 13 or Chapter 11 within the 15 days allowed in the notice of forfeiture. Only then would they be assured of the opportunity to stretch out the period of cure in a plan.[3]

---

3. Moreover, as the instant land contract forfeiture remedies herein are creatures peculiarly of the law of the State of Michigan, and as, unlike

the Court of Appeals, we are a court located solely within that state and have few, if any, duties to other states, we may not shirk our duty

For the same reason, we reject the fixing of the date of the entry of the judgment of forfeiture and possession as the deadline for exercise of the debtor's right to cure a default under § 1322(b). Here, too, an adverse judgment would not only determine the state law issues, but would emasculate the vendee's right to bankruptcy court relief. Once a state court judge had determined the amount of the default and established the redemption period, § 1322(b) of the Code would be virtually useless.

The Court of Appeals "despair[ed] of finding any clear-cut statutory language or legislative history that points unerringly to a construction of the statute that is free from challenge." *Id.* at 1435. Instead, it reached a "pragmatic" result—"one that ... works the least violence to the competing concerns evident in the language of the statute but also one that is most readily capable of use." In reaching its result, the court examined the competing policy concerns in tension in the statute. These concerns were the possible effects the bankruptcy law might have upon the residential real estate market and the competing objective of permitting homeowners to keep their homes through a chapter proceeding. *Id.* at 1433–1434. It determined that

> ... any particular result often reflects the value judgment of the particular court as to which of the two competing values should predominate, or at least which is more attractive under the specific facts of the case at hand. All courts agree that at some point in the foreclosure process, the right to cure a default is irretrievably lost; however, the statute itself provides no clear cut-off point except that which the courts may seem fit to create. The closer that point of finality is to the beginning of the

process, the greater is the protection accorded the mortgage holder, and, hence, the more attractive the home mortgage becomes as an investment. Conversely, the further down the line the court can reach to protect the debtor from the consequences of his default, the better the debtor's needs are met by the Chapter 13 proceedings, and the more attractive those proceedings become to such debtor.

*Id.* at 1435. By drawing the line at either the 16th day after the notice of forfeiture or the date the judgment of forfeiture and possession enters, we would be tipping the balance, we believe, too far in favor of the sellers.

This leaves the expiration of the redemption period and the date the writ of restitution is issued as possible cut-off points. In *In re Chester R. McFadden,* Case No. 84–01877–BE (March 22, 1985, E.D.Mich.), a recent unreported decision, I stated my opinion that a land contract purchaser who files a Chapter 13 may cure the arrearage and reinstate the land contract if the petition is filed any time prior to the issuance of a writ of restitution. That opinion was unnecessary to the result achieved there since the purchaser had filed for bankruptcy relief within the 90-day period of redemption; I could have simply held that the debtor was timely because the redemption period itself had not expired by the time he filed.[4] The opinion relied heavily upon *dictum* in *Gruskin* which stated that the land contract is not deemed forfeited until the "issuance of the writ of restitution". *Gruskin,* 405 Mich. at 67, 273 N.W.2d 893. The movant has argued strenuously that the court over-emphasized this *dictum,* and that the true state of Michigan law on the topic is found in *Durda.*

---

to interpret the sellers' enforcement rights in bankruptcy merely because they may be alien to the jurisprudence of other states.

**4.** Similarly, in *In re Kelly,* 51 B.R. 9 (Bankr.E.D. Mich.1984), the court stated that "[t]he effect of a land contract vendor's *election to take possession* of the property is akin to a mortgagee's bid of the full mortgage indebtedness at a foreclosure sale. In each case, the indebtedness

ceases to exist. *Kelly* at 10. (Emphasis added.) This language could be construed as implying that it is the vendor's affirmative action that extinguishes the vendee's right to cure defaults. However, any inference to that effect is purely *dictum,* as the parties had mutually and formally agreed to extend the redemption period, and the extension was still in effect when the relevant events transpired.

*Gruskin v. Fisher* was a case wherein the seller had started along the land contract forfeiture process: it sent notice of forfeiture and the purchaser tendered possession and a deed to the premises. However, the seller rejected the tender and elected to pursue foreclosure in order to seek a deficiency judgment against the purchaser. Since no suit for summary proceedings had ever been commenced, the obtaining of a writ of restitution was never in issue or available to the seller. The purchaser argued that once the notice of forfeiture had been served and possession had been tendered, an irrevocable election had been made precluding the seller from bringing a foreclosure action. The Supreme Court held that "while the seller may not accept or take possession and still seek money damages, he may, even after sending notice of forfeiture, refuse tender of possession and either commence an action for money damages or for foreclosure of the land contract." *Id.* at 57–58, 273 N.W.2d 893. Its rationale was that the sending of a notice of forfeiture of a land contract is merely the first step in the obtaining of possession through the commencement of summary proceedings; furthermore, "sending notice of forfeiture does not under the law today [as opposed to at common law] effect a forfeiture. The purchaser is protected by the [summary proceedings] statute from the effect of the notice of forfeiture."

This Court seized upon *dictum* contained in that opinion to determine that the land contract forfeiture process is not concluded until a writ issues. Upon further consider-

ation, the movant here has convinced us that the opinion is erroneous. As can be seen clearly in the statutory sections dealing with the remedy of summary proceedings, and as recognized even in *Gruskin, supra* at 58, 273 N.W.2d 893,[5] the writ of restitution does nothing but effectuate possession in the rightful party. If possession has been peaceably returned to the seller prior to the seller seeking the writ of restitution, or if the property consists of one or more unimproved tracts actually possessed by no one, there is no legal or practical need for the seller to waste time and money[6] to obtain a writ. Instead, the practice is to merely record an affidavit with the Register of Deeds indicating that the redemption period has expired without payment. Land title insurers in Michigan will pass title on such an affidavit without the necessity of a writ of restitution appearing on record. Were we to hold that a writ of restitution must enter prior to the forfeiture being fully effectuated, we would be effecting a substantial change in current practice in this state for no apparent purpose. The bankruptcy court should not require parties in state practice to do useless acts merely to protect against the eventuality of a bankruptcy by one of the parties. *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Lewis v. Manufacturers Bank,* 364 U.S. 603, 609, 81 S.Ct. 347, 350, 5 L.Ed.2d 323 (1961); *cf. Spilman v. Harley,* 656 F.2d 224, 227 (6th Cir.1981).

We choose the date on which the applicable period of redemption expires as the cut-off for a debtor's exercise of its bank-

5. The court stated: "While the statute precludes a land contract seller from seeking a deficiency judgment *if* [emphasis in original] he obtains a writ of restitution *and (by implication) if he otherwise obtains possession of the premises* [emphasis supplied], it does not in terms require that result where he has merely announced a forfeiture of a land contract." Indeed, the author had reached that same conclusion in an earlier opinion. In *In re Kelly, supra* note 5, this Court, commenting on *Gruskin v. Fisher,* noted that, "forfeiture does not actually occur ... *until the vendee actually surrenders possession* ... or until a writ of restitution is issued by the district court. *Id.* at 10 (emphasis supplied).

In retrospect, the Court's first impression that there are alternative means of completing a forfeiture, that is, by writ of restitution or by otherwise peaceably obtaining possession, was the correct view.

6. A writ of restitution must be requested in pleading form, and must be accompanied by a fee of $5.00. Mich.Comp.Laws § 600.5757(4); Mich.Stat.Ann. § 27A.5757(4). The prescribed fee for service of a writ of restitution is $20.00 plus mileage and expenses. Mich.Comp.Laws § 600.2559(1)(m); Mich.Stat.Ann. § 27A.2559(1) (m).

ruptcy law right to cure arrearages and reinstate the normal maturity of the land contract for a variety of reasons. The Sixth Circuit selected the sale date as the cut-off in mortgage foreclosure situations for practical reasons. *Glenn,* 760 F.2d at 1435–36.

(a) The language of the statute is, to us, plainly a compromise, as we have earlier mentioned. Picking a date between the two extremes, is likewise a compromise of sorts.

We, too, are "picking a date between the two extremes".

(b) The sale of the mortgaged property is an event that all forms of foreclosure, however denominated, seem to have in common. Whether foreclosure is by judicial proceeding or by advertisement, and regardless of when original acceleration is deemed to have occurred, the date of sale is a measurable, identifiable event of importance in the relationship of the parties. It is at the heart of realization of the security period.

The date the right to redeem a forfeited land contract expires is specified explicitly in the judgment of forfeiture and possession. It is therefore "a measurable, identifiable event of importance in the relationship of the parties."

(c) Although the purchaser at the sale is frequently the security holder itself, the sale introduces a new element—the change of ownership and, hence, the change of expectations—into the relationship which previously existed.

There is no sale in land contract forfeitures, but ownership changes upon the expiration of the redemption period.

(d) The foreclosure sale normally comes only after considerable notice giving the debtor opportunity to take action by seeking alternative financing or by negotiating to cure the default or by taking advantage of the benefit of Chapter 13. Therefore, setting the date of sale as the cut-off point avoids most of what some courts have described as the "unseemly race to the courthouse." Concededly, no scheme can avoid that possibility altogether, but the time and notice requirements incident to most sales at least provide breathing room and should deter precipitate action that might be expected if the cut-off date were measured by the fact of notice of acceleration or the fact of filing suit.

The expiration of the redemption comes only after the service of a notice of forfeiture, passage of 15 days, service of a summons and complaint, passage of another period of days, trial, entry of judgment, and passage in the normal course of either 90 days or six months. We deem this to be "considerable notice." [7]

(e) Any earlier date meets with the complaint that the rights conferred by the statute upon debtors to cure defaults have been frustrated.

As noted above, setting the deadline at any earlier event would encourage well-advised purchasers to file bankruptcy at the first hint of trouble, thus setting the stage for the "unseemly race to the [bankruptcy] courthouse". Our holding therefore encourages attempts at informal work-outs before the last-ditch bankruptcy filing.

(f) Any later date meets with the objection that it largely obliterates the protection Congress intended for mortgagees of private homes as distinguished from other secured lenders.

Although the Sixth Circuit spoke only of protection for mortgagees, the Bankruptcy Code's language is written in terms equally applicable to the rights of land contract vendors whose vendees file for Chapter 13 relief. The relevant section reads:

1322(b). Subject to subsections (a) and (c) of this section, the plan may—... (2) modify the rights of holders of secured claims, other than a *claim secured only by a security interest in real property* that is the debtor's principal residence, or of holders of unsecured claims, or leave

---

**7.** This factor also makes evident why the date of forfeiture is too early to cut off the vendee's bankruptcy rights. Fifteen days is, in all too many instances, not enough time to receive notice of a possible forfeiture or take responsive action thereto.

unaffected the rights of holders of any class of claims; ..."

As a land contract vendor is a holder of a "claim secured only by a security interest in real property", *Britton, supra,* it, too, is entitled to this protection. Fixing the cutoff at the time the writ of restitution issues will in many cases largely obliterate this protection, as writs do not always issue in the ordinary course.

(g) Any later date also brings with it the very serious danger that bidding at the sale itself, which should be arranged so as to yield the most attractive price, will be chilled; potential bidders may be discouraged if they cannot ascertain when, if ever, their interest will become finalized.

This factor is inapplicable to our situation.

The Cotners also raise an additional point. They note that "according to the Flint Board of Realtors, of 1,273 residential sales in 1985 through May 30, fully 452 or thirty-six percent (36%) have been by Land Contract", that "there is an active secondary market for the sale of Land Contracts, which in Genesee County at least, are regarded much like commercial paper," and that the real estate industry considers the expiration of the redemption period as *the* important date in the forfeiture continuum, when the vendor obtains the right to possess and, more importantly for the realtors, to sell the property again. This information was neither received nor even offered in evidence; it was mere assertion of counsel. Furthermore, such subjective perceptions and expectations are not susceptible of empirical verification. Nonetheless, as argument, it does have merit. Even without quantifying the percentage of land contract transactions in Michigan or deciding the commercial expectations of participants in that market, it is reasonable to assume that parties rely on state court precedent and legal practice which impel the conclusion that once the date on the judgment has passed without a redemption, the seller has the right to resell and peaceably repossess the property even without a writ of restitution. No overriding federal interest is served by overturning those legitimate expectations.

■ In *Gillam v. Samuels,* 32 B.R. 393 (E.D.Mich.1983), the court held that because the purchaser had lost all rights in the real property when the land contract forfeiture redemption period expired, the vendors' demand of the tenants that they pay their rent to them instead of to the purchasers was not violative of the automatic stay. District Judge Cohn recited the facts as follows:

On June 24, 1982, in a forfeiture action in state court, plaintiffs obtained a judgment against Samuels and his wife which entitled them to possession on September 24, 1982 (ninety days after the judgment) unless the default was cured prior to that date. Under Michigan law if Samuels and his wife failed to turn over possession of the property on September 24 plaintiffs could have obtained a writ of restitution from the state court which would have commanded a court officer to remove Samuels and his wife from the property and put plaintiffs in possession. Since the Samuels only occupied part of the property and rented other portions to various tenants, the issuance of the writ of restitution would have also memorialized plaintiffs' right to demand that the tenants pay their rent to plaintiffs.

*Id.* at 394. The writ was obtained on January 25, 1983, after Mrs. Samuels' individual Chapter 13 case, which had been filed on the day before the expiration of the redemption period, was dismissed. Before the writ could be served, however, Mr. Samuels filed his own individual Chapter 13 and sought the protection of the stay, 11 U.S.C. § 362(a). The bankruptcy judge found the Gillams in contempt for intentionally committing acts to force the Samuels to pay rents to them during the pendency of Mr. Samuels' Chapter 13 case. Judge Cohn reversed, indicating that:

Under the law of Michigan the expiration of the ninety-day period in which to cure the default following the judgment of forfeiture effectively terminated Samuels' interest in the property. The writ

of restitution is simply the legal means by which possession is returned to plaintiffs.

Having the sole right to possession and ownership as a result of the state court proceeding, plaintiffs only sought to have the rents from the tenants paid to them as was their right. *The stay provisions of 11 U.S.C. § 362 are inapplicable since Samuels had no rights in the property.*

*Id.* at 396 (emphasis added). The converse is equally true; when the purchaser still has rights in the property, the stay provisions of 11 U.S.C. § 362 are indeed applicable. For this reason, we hold that so long as a purchaser has filed bankruptcy prior to the expiration of the applicable redemption period after a land contract forfeiture judgment has been entered, he or she is protected by the automatic stay, 11 U.S.C. § 362(a), i.e., the stay prohibits the expiration of the redemption period.

We therefore disagree with *In re Owens,* 27 B.R. 946, 10 B.C.D. 444 (Bankr.E.D. Mich.1983), at least in Chapter 13 and Chapter 11 cases. That case held that the automatic stay does not toll the running of the land contract forfeiture judgment redemption period, and that the only refuge a debtor or trustee has is the 60-day extension provided in 11 U.S.C. § 108(b). Since that case was a Chapter 7, § 1322(b)(5) was unavailable to the debtor. In the absence of statutory authority to cure a default in Chapter 7, it may be appropriate to leave the debtor and the trustee to the limited efficacy of § 108(b), and we would limit the holding in *Owens* to that situation. Applying that case to Chapter 13 would be unwarranted, for this chapter contains explicit federal statutory authority to cure defaults and reinstate otherwise accelerated contractual duties, which is a right generally unknown to state law. Indeed, the right to effectuate a cure "within a reasonable time", § 1322(b)(5), is useless unless it comes with the right to freeze the status quo until such cure has been effected. Section 362(d), on the other hand, provides creditors with equivalent protection: in a Chapter 13 case, if the period of cure proposed is too long or is otherwise unfair, the Chapter 13 plan will be denied confirmation and the stay may be lifted or modified. To determine § 362 inapplicable at the inception of the case reads out of the Code the beneficent aspects of cure and deacceleration. We decline to do that.

We are fully aware that this holding seemingly contradicts the apparently plain standard established in *Bank of Commonwealth v. Bevan,* 13 B.R. 989, 7 B.C.D. 557 (E.D.Mich.1981) and strongly reaffirmed in *Glenn:* § 362(a) stays *acts,* not time, and therefore periods of redemption which expire on their own without any affirmative act by a party are not affected by the automatic stay. In the contexts of those cases and others which so remark, this statement is accurate. However, neither of these cases thoroughly analyze the effect of this apparent rule in other contexts. In both *Bevan* and *Glenn* the issue was whether the stay was effective to suspend the running of a mortgage foreclosure redemption period, and the answer was, of course, no. The underlying rationale, when all of the other arguments are stripped away, is that the event of a sale, which triggers the redemption period, causes a fundamental change in the relationship between the parties. They are no longer parties to a contract; instead their rights are cemented by the state law consequences of sale, *see In re Young, supra; In re James, supra,* and nothing in the Bankruptcy Code further alters the substantive rights of the parties (save for the extremely limited effect of § 108(b)). Likewise, there is only one point in the forfeiture process at which the rights of the parties are irrevocably transformed. Once the redemption period determined by the forfeiture judgment has expired, the vendee ordinarily has no right to redeem, *Gillam v. Samuels, supra; Nash v. State Land Office Board,* 333 Mich. 149, 52 N.W.2d 639 (1952); conversely, the vendor is under no duty to accept untimely tenders of the default balance. *Cf. Birznieks v. Cooper, supra.* The best way to illustrate this parallelism is to illustrate it:

MORTGAGE FORECLOSURES:    Point at which right to
                          deaccelerate dissolves

| Default and Acceleration | Judgment of Foreclosure or Notice of Foreclosure by Advertisement | Foreclosure Sale | End of Redemption Period |

LAND CONTRACT FORFEITURES:    Point at which right to
                              deaccelerate dissolves

| Notice of Forfeiture | Judgment of Forfeiture | Expiration of redemption period | Writ of restitution or delivery of possession |

In short, the only point which compares with the foreclosure sale in legal consequence is the end of the judicially declared redemption period. We are confronted with a clear choice; we may adopt a simple construction of § 362(a), holding that it does not toll any redemption period, and thereby undercut the rehabilitative goals of the Bankruptcy Code; or we may broadly interpret the stay so as to give full effect to the remedies provided to land contract vendees under state law. We opt for the latter alternative.

This issue was recently discussed by bankruptcy courts in two other states. In *In re Vacation Village Ltd. Partnership*, 49 B.R. 590 (Bankr.N.D.Iowa 1985), the court appears to reach a contrary result. There, the land contract vendor served a notice of forfeiture giving the debtor 60 days in which to redeem. Evidently there is no need to obtain a judgment under Iowa forfeiture law. Two weeks before the expiration of the redemption period, the vendee filed for relief under Chapter 11.[8] In ana-

lyzing just what rights the debtor held under state forfeiture law, the court relied heavily on the analysis utilized in *Johnson v. First National Bank*, 719 F.2d 270 (8th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984), an opinion which was commented upon favorably in *Glenn*. In *Vacation Village*, the court determined, as we do here, that the debtor retained an equitable interest in the property before the redemption period lapsed. However, the court then held that the expiration of the redemption period was not a proceeding or an act which was tolled by any of the provisions of § 362(a). Upon the expiration of the redemption period or the extension granted by § 108(b), full title to the property revested in the vendor without any further act of the seller. *Vacation Village*, 49 B.R. at 592–593.

*Vacation Village* may be distinguished because it dealt with a forfeiture procedure substantially different than the one used in Michigan. Specifically, forfeitures of land contracts in Iowa, or at least some of them,

---

**8.** While *Vacation Village* involved a Chapter 11 bankruptcy, we do not find that to be a material difference. Even though the cure provisions under Chapter 13 differ from those under Chap-

ter 11, access to those remedies are governed by the same concerns. *See In re Young*, 48 B.R. 678, 12 B.C.D. 1263, 12 C.B.C.2d 983 (Bankr.E.D. Mich.1985).

may occur without any judicial confirmation. Thus, the length of the redemption period declared in the notice of forfeiture is derived, not from a statutory or judicial determination, but from the land contract between the parties. It further appears that the notice of forfeiture is the sole act necessary to effect a forfeiture; upon expiration of the stated time, the contract is forfeited without any further action. *Id.* at 593. Although the *Vacation Village* opinion does hold that a land contract vendee holds an equitable ownership interest in the property prior to forfeiture, it is silent as to whether a vendee possesses any means of contesting the notice of forfeiture other than by redeeming. In short, we can not say that the rights of the parties to a land contract in Iowa are so similar to the rights of purchasers and sellers in Michigan that the rights of the parties in bankruptcy court must be the same. If Iowa vendees have as few rights as they appear to have, that is a matter for the Iowa legislature; we base our analysis on Michigan law, and find that buyers on land contract have significant substantive rights before the forfeiture is final.

A second case, *In re McCallen,* 49 B.R. 948, B.L.R. ¶ 70,604 (Bankr.D.Or.1985), arises under circumstances more akin to those which we face here, and reaches a similar conclusion. There, the vendors had obtained a decree of strict foreclosure, which appears to be the Oregon equivalent of a judgment of forfeiture. The day before the judicially-decreed redemption period was to expire, the debtors filed a petition for relief under Chapter 11. The debtors argued that the redemption period in a strict foreclosure had a different nature than the redemption period after a mortgage foreclosure sale. The court found that "a decree of strict foreclosure is not a decree which immediately, finally, and completely cuts off the vendee's equitable interest in the property." *Id.* at 951, B.L.R.

at 87,262 (quoting *Blondell v. Beam,* 243 Or. 293, 413 P.2d 397, 399 (1966)). It then held that "despite the interlocutory decree of strict foreclosure, a debtor retains under Oregon law a real property interest which cannot be terminated without affirmative action." *Id.* at 951, B.L.R. at 87,263. Accordingly, it held that § 362(a), not § 108(b), was the controlling Code provision, and the redemption period was tolled.

Like Michigan, Oregon law evidently considers a judgment of strict foreclosure or forfeiture to be interlocutory in nature. But again there is a material distinction: in Oregon, the vendee's ownership interest does not terminate until the vendor takes some affirmative action to confirm and finalize the forfeiture. As we indicated, *infra,* in Michigan the vendee's equitable ownership interest under the land contract terminates at the end of the redemption period, regardless of whether any affirmative action is taken. Were Michigan law the same as Oregon law on this point, our holding in *In re Chester R. McFadden,* would be correct, and there would be no need for this re-examination. Thus, while *McCallen* is persuasive, it is not on all fours with the case at bar.

That opinion does, however, draw support from a third decision which we find to be conceptually indistinguishable from this case insofar as it discusses the effect of a forfeiture judgment. In *In re St. Amant,* 41 B.R. 156, 11 B.C.D. 1285, 10 C.B.C.2d 1268 (Bankr.D.Conn.1984), the creditor obtained a default judgment and recorded it as a lien on the debtor's realty. The creditor then brought a strict foreclosure action to enforce the lien. In Connecticut, the procedure requires the debtor to obtain a judgment of strict foreclosure, wherein the judge establishes both the amount of the default and sets the "law day" which is the Connecticut equivalent of a redemption period.[9] The debtor eventually filed for relief

9. In Connecticut, the length of the redemption period is evidently a matter of considerable judicial discretion; in Michigan, the judge's determination is more limited. Under Mich. Comp.Laws § 600.5741, Mich.Stat.Ann.

§ 27A.5741, the trier of fact, usually the judge, determines the amount of the default, which is stated in the judgment for possession. That amount in turn dictates the length of the redemption period, Mich.Comp.Laws § 600.-

under Chapter 13 shortly before the expiration of this redemption period. After examining the debtor's rights under state law and the Bankruptcy Code, the court held that § 362(a) prevented the passing of the law day. Importantly, it noted the difference between the effect of a statutory redemption period pursuant to a sheriff's foreclosure sale and the entry of a judgment of strict foreclosure. In a foreclosure *sale*, the only right which the mortgagor retains is the statutory right to redeem, and it is that interest which passes into the bankruptcy estate. On the other hand, a judgment of strict foreclosure does *not* work a change of ownership; that occurs only upon the expiration of the law day,[10] which is part of the litigated judgment between the parties rather than a statutorily imposed right. The court concluded thus: "I am convinced the involuntary transfer of ownership worked by the terms of the strict foreclosure judgment is the very thing which § 362(a) was designed to prevent." 41 B.R. at 163. Accordingly, it held that § 362(a), and not § 108(b), controlled the expiration of the law day.

The *St. Amant* case, we feel, correctly recognizes that the treatment of a redemption period in bankruptcy is dependent on the means by which that redemption period is established. Where it begins to run by operation of law *after* the change of equitable title, as in a foreclosure sale, *see In re Young, supra*, the debtor retains no substantive ownership interest which passes to the bankruptcy estate. However, when the redemption period is established by judgment, and where, by the terms of that judgment, equitable title does not pass until after the redemption period has expired, the debtor retains an actual ownership interest. The profound difference in the effect of a foreclosure sale and a judgment of forfeiture is reflected by the legal terms of art denominating the parties; af-

ter a judgment of forfeiture and until the redemption period expires, the vendor is still called a land contract vendor, *cf. In re Kelly*, 51 B.R. 9 (Bankr.E.D.Mich.1984), whereas a mortgagee ceases to be a mortgagee upon the sale, since even if he is not paid in full at the sale, there no longer is a mortgage to define his status. *Cf. In re Young, supra, In re James, supra.* In *Glenn*, the Sixth Circuit had no occasion to examine the differences between foreclosure and forfeiture. We feel that, despite the seemingly broad statements therein, the opinion may rightly be limited in application to statutory redemption periods which begin to run after an event which has caused equitable title to the property to change hands, and that where no change of equitable ownership occurs until after its expiration, the debtor retains an interest in the property (and in the contract) which may be dealt with in bankruptcy.

■ Once we reach this decision, we have little difficulty in holding that the stay is in effect here. The judgment of forfeiture is not final until the redemption period expires; thus, any further proceedings to obtain possession constitute the continuation of a judicial proceeding against the debtor within the intended meaning of § 362(a)(1). Likewise, any automatic transfer of the debtor's property interest occasioned by the expiration of the redemption period would constitute the enforcement of a pre-petition judgment against the debtor or his property, § 362(a)(2), and an act to obtain possession of property of the estate, § 362(a)(3). Our decision is consistent with the spirit, if not the letter, of *Glenn:* where there is no substantive right to cure a default and deaccelerate a debt under state law, the stay is ineffective as to any acts to obtain possession of property; but once the debtor

5744(3), Mich.Stat.Ann. 27A.5744(3). However, in both situations, the establishment of the redemption period necessitates a judicial determination rather than reference to the contract between the parties, as in, for example, Iowa.

10. We note that in Connecticut, just as in Michigan, there is no need for the creditor to take any additional action to effect the change of ownership. *In re St. Amant*, 41 B.R. 156, 159, 11 B.C.D. 1285, 1286, 10 C.B.C.2d 1268, 1271 (Bankr.D.Conn.1984).

comes under the protection of the Bankruptcy Code with an equitable ownership interest in the property, the stay affords him the opportunity to protect that interest via the means provided by the Bankruptcy Code.

In the case at bar, we hold that since the debtor filed his Chapter 13 petition before the 90th day of his redemption period was over, various provisions of § 362(a) tolled the expiration of that redemption period. *McCallen, supra; St. Amant, supra.* If his plan proposes a cure of the land contract default in a reasonable period of time and is otherwise confirmable, 11 U.S.C. § 1325, (questions we do not decide today), he may cure the default and reinstate the original terms of his land contract with the Cotners. Accordingly, the Cotners' motion for relief from the automatic stay is denied.

An order consistent with this opinion will be entered contemporaneously herewith.