**In re NORTHERN ACRES, INC., Debtor.**

**Bankruptcy No. 84–09317.**

United States Bankruptcy Court, E.D. Michigan, N.D.

Sept. 6, 1985.
As Amended Sept. 13, 1985.

---

See also Bkrtcy., 52 B.R. 641.

Michael C. Reinert, Saginaw, Mich., for Northern Acres, Inc.

Lambert, Leser, Hebert, Dahm, Giunta, Cook & Schmidt, P.C. by John J. Hebert, Bay City, Mich., for Alpena Boys Club, Inc.

---

## MEMORANDUM OPINION REGARDING MOTION OF ALPENA BOYS CLUB, INC. FOR RELIEF FROM THE AUTOMATIC STAY

ARTHUR J. SPECTOR, Bankruptcy Judge.

On September 6, 1985, the Court entered a Memorandum Opinion and an order in this matter. Pursuant to Local Rule 17 k of the Local Rules for United States District Court for the Eastern District of Michigan, Alpena Boys Club timely filed a motion for reconsideration. That motion was granted and, upon further review of the matter, the Court issues this amended memorandum opinion.

The material facts not in dispute are as follows: On May 26, 1983 Alpena Boys Club, Inc. (the Boys Club) sold property in Montmorency County by land contract to Gerald and Geraldine Franks for a purchase price of $180,000.00. At that time or shortly thereafter, the Franks (who are the principal shareholders and operating officers of the debtor) assigned their vendee's interest in the premises to Northern Acres, Inc., debtor herein. Northern Acres in turn entered into various land contracts with others, selling off parcels to the public. On July 27, 1984, the debtor filed its petition for relief under Chapter 11.

However, on January 22, 1984, some six months prior to entering bankruptcy, the debtor quit-claimed its remaining interests in the premises to Robert and Patricia Maul. Evidently there was a default on payments under the contract, and on September 26, 1984, the Boys Club commenced a land contract forfeiture proceeding to recover possession pursuant to Mich.Comp. Laws § 600.5701–5759; Mich.Stat.Ann. § 27A.5701–5759. This action resulted in the entry of a judgment of forfeiture in the state district court on November 2, 1984; that judgment established a redemption period of 90 days. Mich.Comp.Laws § 600.-5744; Mich.Stat.Ann. § 27A.5744.[1] On

---

1. The amount of the default plus costs, as stated in the judgment of forfeiture, is $26,429.40. Although Northern Acres was listed as a party in the forfeiture notice and in the judgment of

forfeiture, the movant did not seek to have the stay lifted at that time. However, the debtor apparently did not appear in the state court action, nor was it a necessary party to the suit,

January 31, 1985, one day before the redemption period would have expired, the Mauls reconveyed their interest in the premises back to the debtor. The movant obtained a writ of restitution in state court on March 11, 1985.

The Boys Club brought the instant motion on April 19, 1985 before attempting to enforce the writ, even though it takes the position that the debtor has no interest in the property, because the expiration of the redemption period and the issuance of the writ of restitution extinguished any interest the debtor may have in the property. The movant requests us to enter an order declaring that the stay does not apply to the property; alternatively, if we determine the stay to be in effect, it asks for relief from the stay under §§ 362(d)(1) and (d)(2). The debtor responds by stating that the reconveyance of the property brought the property back into the estate. It further alleges that: (1) the movant is "adequately protected by the value of the property and balances owing on subsequent land contracts"; and (2) the debtor has equity in the property, which is necessary for an effective reorganization.

■ Before determining whether there are grounds for relief from the stay, we examine whether the stay is in effect at all with regard to the reconveyed property. We find that once the debtor in possession obtained the property after the filing of the petition, it did come under the protective umbrella of 11 U.S.C. § 362(a). First, the debtor acquired an interest in the property before the expiration of the redemption period established in the judgment of forfeiture. Since we have recently held that the process of land contract forfeiture is not complete until the redemption period expires, *In re Carr,* 52 B.R. 250 (Bankr.E.

D.Mich.1985), the ability to finalize the forfeiture is stayed, as any further action thereon would constitute the "... continuation ... of a judicial, administrative or other action or proceeding against the debtor." § 362(a)(1). Second, when the debtor acquired the property from Robert and Patricia Maul, it became "property of the estate"; §§ 362(a)(3) and (a)(4) expressly enjoin any actions on the part of the Boys Club to obtain possession of the property or to create, perfect or enforce a lien against property of the estate.[2] Third, even if the property is not property of the estate as that term is defined by 11 U.S.C. § 541(a), and is instead property of the debtor, continuation of the forfeiture proceeding would be prohibited by § 362(a)(5) and (a)(6). These provisions have the effect of preventing holders of pre-petition claims against the debtor from taking any actions to create or perfect a lien against property of the debtor or to take possession of property of the debtor. Thus, when the debtor reacquired the property, it was protected by the automatic stay.

■ However, we also find that, even though the property came back into the estate and under the operation of the stay, the redemption period was not tolled by § 362(a). In so holding, we distinguish this case·from *In re Carr, supra,* wherein we determined that the automatic stay *did* have the effect of staying the running of the redemption period. In that case the debtor purchased his home on land contract. He eventually defaulted, and the vendors obtained a foreclosure judgment which gave the debtor 90 days to cure the defaults. On the 90th day, he filed a petition under Chapter 13. We found that the redemption period in Michigan land con-

since it admittedly had no interest in the property at that time and Mich.Comp.Laws § 600.5728; Mich.Stat.Ann. § 27A.5728 provides that the notice of forfeiture be served on the "vendee *or* the person holding possession under him". (Emphasis added). The debtor does not question the validity of the judgment.

2. If the Chapter 11 debtor herein were an individual debtor rather than a corporate entity, it is

possible that the after-acquired assets would be "property of the debtor" rather than "property of the estate". However, in a corporate Chapter 11 case, there is no distinction between property of the debtor and property of the estate. *See In re Fitzsimmons,* 20 B.R. 237, 9 B.C.D. 154, 6 C.B.C.2d 887 (9th Cir.B.A.P.1982), *aff'd* 725 F.2d 1208 (9th Cir.1984); *In re Brannan,* 40 B.R. 20, 12 B.C.D. 421 (Bankr.N.D.Ga.1984).

tract forfeitures is most nearly analogous to the period just prior to a sheriff's sale in foreclosure proceedings and, accordingly, when a debtor files a petition for bankruptcy relief before the end of the forfeiture redemption period, the running of that period is tolled by § 362(a). Thus, the debtor was able to propose a plan by which he could cure the defaults and resume payments under the contract.

The instant case seems to fall within our analysis in *Carr*, insofar as the debtor possessed an interest in the property prior to the expiration of the redemption period. There is, however, a critical distinction which compels us to reach a different result: in the case at bar, the Boys Club is not the holder of a claim on which the debtor may cure defaults and resume payments through a plan of reorganization.[3] The best way to illustrate this distinction is by way of a somewhat simpler hypothetical situation. Suppose, for example, that X purchases property from Y under a land contract. Upon X's failure to make payments, Y sues and obtains a judgment of forfeiture; on the day before the redemption period is set to expire, X conveys his entire interest in the property to Z, a Chapter 11 debtor in possession. Under these circumstances, the Chapter 11 debtor would have no ability to cure and deaccelerate the judgment via a plan of reorganization, because §§ 1123 and 1124, by their plain language, would not apply. Under § 1123(b), a plan may "impair or leave unimpaired *any class of claims*, secured or unsecured, *or of interests*". Section 1124[4] determines whether the claim of a creditor is impaired under the debtor's plan of reorganization, also by reference to "claims or interests" of the creditor. In the hypothetical, Y does not have a pre-petition claim or interest against Z, the debtor, only a claim against X, his vendee. Even though the remedial provisions of the Bankruptcy Code are ordinarily interpreted to provide debtors maximum flexibility in curing their financial ills, it would be stretching too far, we believe, to find that an obligation assumed by the debtor after the commencement of the case comes within the ambit of the cure provisions of Chapter 11, when there is no pre-petition connection between the debtor and the holder of

---

3. We recognize that *Carr,* and the opinion from which *Carr* draws its analysis, *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985) were both Chapter 13 cases, while the debtor herein filed Chapter 11. However, the analysis of whether a debtor has access to the cure provisions in either chapter is essentially the same. *See In re Young,* 48 B.R. 678, 12 B.C.D. 1263, 12 C.B.C.2d 983 (Bankr.E.D.Mich.1985).

4. Section 1124 states:
Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;
(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—
(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;
(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and
(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest; or
(3) provides that, on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to—
(A) with respect to a claim, the allowed amount of such claim; or
(B) with respect to an interest, if applicable, the greater of—
(i) any fixed liquidation preference to which the terms of any security representing such interest entitle the holder of such interest; or
(ii) any fixed price at which the debtor, under the terms of such security, may redeem such security from such holder.

the obligation.[5] For that reason, we would take the position that in the above hypothetical, Y, the land contract vendor, does not have a claim or interest against the debtor or the estate, as those terms are used in the Bankruptcy Code. In another recent case, *In re Young*, 48 B.R. 678, 12 B.C.D. 1263, 12 C.B.C.2d 983 (Bankr.E.D. Mich.1985), we held that the purchaser at a mortgage foreclosure sale has no claim against the debtor even if the purchaser also happens to have been the mortgagee, because the purchaser has no right to demand payments from the mortgagor. *See also In re Brown*, 13 B.C.D. 390 (Bankr.S. D.Ohio 1985). That analysis is equally applicable to the situation now before us. Thus, when X sells his interest in the property to the debtor, subject to the judgment of forfeiture, the debtor gets only what X had—an interest in property which would be extinguished unless the judicially-decreed redemption price was paid in one day—plus the additional 60-day period allowed by 11 U.S.C. § 108(b). *In re Owens*, 27 B.R. 946, 10 B.C.D. 444 (Bankr.E.D. Mich.1983).

 The above hypothetical is materially indistinguishable from the case at bar, because the Boys Club never held a claim for payment directly against Northern Acres. The Boys Club sold the property to the Franks, who then assigned their interest to the debtor. There was never any novation or reformation of the land contract such that the Boys Club became the holder of a claim or interest directly against the debtor; instead, it had only a lien on the premises. When the "creditor" holds no right to payment from the debtor, but has only a right to possession of the premises, there is no claim whose default may be cured. Since Northern Acres was not the obligor on the land contract, the fact that it briefly held the vendee's interest pre-petition is insignificant; it was merely a transferee of the initial obligee. Here, when the debtor reacquired the premises from the Mauls, the creditor had already reduced its lien to

a judgment which gave it an absolute right to possession if the property was not redeemed within 90 days. Northern Acres failed to exercise its right to cure the defaults within 60 days after the commencement of the case, 11 U.S.C. § 108, therefore, the right to possession was lost.

Thus, upon the expiration of the redemption period, the property ceased to be property of the estate. Technically, the stay was still in effect to the extent that the debtor may have had actual possession, as § 362(a)(3) also enjoins any act "to obtain possession of property of the estate or of property *from the estate ...*" (Emphasis added.) However, in light of the foregoing analysis, we see no reason why the stay should not be lifted, either for cause under § 362(d)(1), or because the debtor has no equity in the property and it is unnecessary (or at least unavailable) for an effective reorganization. Accordingly, the motion of the Boys Club for relief from the stay is granted.

An order consistent with this opinion will be entered contemporaneously herewith.

---

**5.** We are aware that § 1124(2)(A) allows the cure of both pre- and post-petition defaults, but this provision was apparently intended to address post-petition defaults of the debtor on obligations which were incurred pre-petition.